594 F.2d 947
 4 Fed. R. Evid. Serv. 166
 UNITED STATES of America, Appellee,
v.
Robert E. FORSYTHE, Appellant in No. 77-2609.
Appeal of John J. BLASKOVICH, in No. 77-2610.
Appeal of Edward J. FRANCE, in No. 77-2611.
Appeal of Edward T. SNEE, in No. 77-2612.
 Nos. 77-2609 to 77-2612.
 United States Court of Appeals,
Third Circuit.
 Argued Dec. 11, 1978.
Decided Feb. 15, 1979.
 
 Thomas A. Livingston, Dennis J. Clark, Livingston, Miller, O'Malley & Clark, Pittsburgh, Pa., for appellant, Robert E. Forsythe.
 Stuart E. Savage, Savage & Wiedt, Pittsburgh, Pa., for appellant, John Blaskovich.
 Wendell G. Freeland, Nicholas R. Stone, Freeland & Kronz, Pittsburgh, Pa., for appellant, Edward T. Snee.
 Raymond H. Bogaty, Pittsburgh, Pa., for appellant, Edward J. France.
 Robert J. Cindrich, U. S. Atty., James J. West, Jeffrey A. Manning, Asst. U. S. Attys., Pittsburgh, Pa., for appellee.
 Before GIBBONS, VAN DUSEN and ROSENN, Circuit Judges.
 OPINION OF THE COURT
 GIBBONS, Chief Judge:
 
 
 1
 Four defendants in these consolidated appeals, Robert E. Forsythe, John J. Blaskovich, Edward J. France and Edward T. Snee, appeal from judgments of sentence imposed following their conviction of conspiracy to conduct the affairs of the Levitt Agency through a pattern of racketeering activity in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(d), and of the underlying substantive offense, a violation of 18 U.S.C. § 1962(c). Because the court erred in admitting evidence of uncharged crimes, we reverse the convictions and remand for a new trial.
 
 
 2
 The conspiracy in issue is the same one which we considered in United States v. Herman (United States v. McCann), 589 F.2d 1191 (3d Cir. 1978). Although those defendants were tried separately after the trial of the four defendants now before us had concluded, the government's case in chief and on rebuttal was virtually identical in both trials. In United States v. McCann, supra, we held that it was error to admit against McCann the testimony of Jacob Winner as to crimes committed by McCann unrelated to the bribery scheme in which the Levitt Agency was involved. The panel which decided the McCann appeal was aware when it did so that the district court, in its ruling admitting Winner's testimony against McCann, had relied on its prior ruling in the instant case admitting the same testimony against Forsythe, Blaskovich, France and Snee. Reviewing the record in their trials, this panel now finds that the error which required a new trial for McCann infected the earlier trials as well.
 
 
 3
 Steven C. Levitt, who had pled guilty to a violation of 18 U.S.C. § 1962(d), was the government's principal witness. The nature of his testimony is set forth in detail in the McCann opinion. For present purposes it suffices to note that he established that all four defendants here were magistrates responsible for fixing bail; that he operated a bail bond agency; that his agency had an arrangement with these magistrates to kick back to them one half of the premium on each bail bond placed in their offices; and that the four defendants received kickbacks in instances where they fixed bail. Victor Kozlowski and Mary Hupert, both former employees of the Levitt Agency, confirmed Levitt's account in substantial part.
 
 
 4
 During its case in chief the government also proffered the testimony of Jacob Winner, who operated a bail bond agency in Pittsburgh known as the American Bonding Company. The government offered to show that American Bonding Company regularly received referrals from and split premiums with the magistrates on trial. The government's theory of admissibility of this evidence of uncharged crimes was that it tended to establish a common scheme or plan in that the crimes were carried out in the same manner as those that had been charged. Fed.R.Evid. 404(b).[1] The district court, recognizing that the indictments charged a common plan with the Levitt Agency only, held that the evidence was inadmissible to prove the offenses charged on the prosecutor's theory. The court ruled that the existence of a common scheme or plan including the American Bonding Company was not at issue in the case, and that the prejudicial effect of the testimony outweighed its probative value. (App. 698-700). Thus the testimony was excluded in the government's affirmative case.
 
 
 5
 In rebuttal, however, after the completion of the defense cases, the court admitted the Winner testimony against all four defendants as rebuttal to character evidence. In the McCann trial the court admitted the Winner testimony in rebuttal on a similar rationale. Our task in this case is to determine whether any testimony presented in defense by any of the present defendants so distinguishes this case from McCann as to justify a different ruling on the admissibility of Winner's testimony in rebuttal.
 
 
 6
 Magistrate France refrained from testifying. Regis Welsh, the Coordinator for the Allegheny County Minor Judiciary, testified about the number of bailable cases handled by France during the period of the indictment. France also presented reputation testimony from seven character witnesses. The district court, relying on dicta in United States v. Chrzanowski, 502 F.2d 573, 576 (3d Cir. 1974), ruled that because France had offered reputation evidence, Winner's evidence of uncharged bribes was admissible to rebut it. The record in France's case is, for all relevant purposes, indistinguishable from that in McCann, and the holding in that case that use of other crimes evidence to rebut evidence of good character was error is controlling here. Admission of the testimony violated Fed.R.Evid. 608(b), went beyond what is permitted by Rule 405(a), (b), and cannot be justified under Rule 404(b). We refer to the more detailed interpretation of those rules set out in the McCann opinion.
 
 
 7
 In McCann we noted that had the defendant in his own case made a general denial of the receipt of bribes from Any source, the Winner testimony might have been proper rebuttal. See Walder v. United States, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954). The government contends that the evidence presented by Magistrates Forsythe, Blaskovich and Snee came close enough to a general denial to open the door to Winner's rebuttal. We have examined that testimony carefully, and we reject that contention.
 
 
 8
 Magistrate Forsythe did not testify. He offered a number of character witnesses, who testified that he had an excellent reputation as a truthful, honest and law abiding citizen. In addition, Mrs. Forsythe, his wife, testified that her husband had once asked her to pick up a power of attorney at the Levitt Agency office because "he didn't think it was appropriate" for magistrates to be seen in a bondsman's office. (App. 811). Forsythe's secretary Mrs. Blumer, testified that he had instructed her not to recommend any bail bond agency, but rather to hand the defendants a telephone book and let them make their own selection (App. 822). She denied having seen envelopes from the Levitt Agency in the magistrate's office, and denied having seen Forsythe receive any payment envelopes or gifts from that agency. (App. 825). At the close of defendants' cases, the district judge held an initial side bar at which he ruled that the testimony of Mrs. Blumer amounted to a general denial of referrals to any bailbondsman, and that, therefore, Winner's testimony that he had received such referrals from Forsythe could properly be admitted in rebuttal. (App. 1325, 1327). He also ruled that Forsythe's evidence did not amount to a general denial of all kickbacks sufficient to justify the admission of Winner's testimony regarding uncharged bribe transactions. (App. 1332).
 
 
 9
 Magistrates Blaskovich and Snee both took the stand in their own defense. Their defense counsel were well aware of Winner, and in their direct examination of those defendants they carefully limited the denial of payoffs to transactions with the Levitt Agency. The government urges that Blaskovich's attorney in fact overstepped the bounds in a question and answer transcribed as follows:
 
 
 10
 Q. Did you were you ever a party to such an arrangementA. No, sir.
 
 
 11
 Q. with the Levitts?
 
 
 12
 A. No, sir.
 
 
 13
 (App. 875).
 
 
 14
 The cold printed record is at best ambiguous about whether those in the courtroom could have understood the question and answer to be a general denial of wrongdoing. Elsewhere, however, there is a clear indication that it was not so understood. At the completion of his direct examination, counsel for Blaskovich, aware of the government's preoccupation with the Winner evidence, approached the bench and requested an order limiting the scope of cross examination to transactions with the Levitt Agency, and prohibiting reference to transactions with Winner. (App. 885). The government insisted that cross-examination could go into the Winner transactions. The court ruled in favor of Blaskovich. (App. 886). Thus it appears that the simultaneous understanding of those in the courtroom was that the quoted question and answer referred only to the Levitt Agency.
 
 
 15
 Despite the trial court's ruling, on cross-examination the government attorney twice approached the forbidden area. Once, before the question was completed, Blaskovich's attorney objected, and this colloquy occurred:
 
 
 16
 Mr. Savage: Excuse me. If Your Honor please, I object to what I believe to be the new line of questioning, because I think that, potentially, transgresses the Court's ruling, which you previously made in this case.
 
 
 17
 The Court: He didn't finish the question.
 
 
 18
 Mr. Savage: I understand.
 
 
 19
 The Court: I trust that he won't transgress the Court's ruling.
 
 
 20
 Mr. Savage: Well, I didn't or I wouldn't have suggested that to you.
 
 
 21
 The Court: I understand that you interrupted him, but he thoroughly understands the ruling of the Court.
 
 
 22
 (App. 921). Despite this clear admonition to abide by the ruling that in cross-examination the prosecutor should stay away from the Winner transactions, the government now contends that it succeeded, a few questions later, in opening the door in the following manner:
 
 
 23
 Q. So, sir, it (sic) it your testimony, then, sir, that, with the exception of the $5.00 notary fee, you never received any money from any bondsmen?
 
 
 24
 Mr. Savage: If your Honor please well, I withdraw that.
 
 
 25
 The Court: You may answer the question.
 
 
 26
 The Witness: No, sir; not to my knowledge.
 
 
 27
 (App. 925). The question, perhaps calculatedly, is ambiguous, since it begins with a reference to Blaskovich's prior testimony, and thus may have been understood by the witness and the court to be a reference to that testimony, which was restricted to the Levitt Agency transactions. However, when the government attempted, later, to justify the admission of the Winner testimony in rebuttal, it argued that the question and answer amounted to a general denial. Blaskovich's attorney responded that if so construed the question was a deliberate violation of the court's order limiting the scope of cross-examination, reiterated only a few pages before in the transcript, and that in the circumstances a simultaneous objection was not required. Although the district court believed that Blaskovich had denied making any referrals and hence had opened the door to Winner's rebuttal on that issue,[2] it agreed that the door had not been opened to the evidence of the uncharged bribes, ruling:
 
 
 28
 The Court: I am satisfied for two reasons. First, the scope of the witness' answer was not sufficiently broad to permit this type of rebuttal, and, second, even if it were, I think the evidence, at this point, would be too highly prejudicial.
 
 
 29
 (App. 1337).
 
 
 30
 Thus the trial court apparently did not believe that the prosecutor's ambiguous question had actually elicited such a general denial of wrongdoing as to justify rebuttal by proof of other crimes.[3]
 
 
 31
 Magistrate Snee, when he testified, denied taking money from the Levitt Agency. He made no general denial of wrongdoing.[4] He did, however, testify that on occasion he made telephone calls to that agency and to several other bailbondsmen whom he mentioned by name. Winner was not among them. During cross-examination of Snee the prosecutor asked
 
 
 32
 Q. Did you ever call a bondsman by the name of Jacob L. Winner
 
 
 33
 A. Never.
 
 
 34
 Q. Of the American Bonding Company?
 
 
 35
 A. Never, sir.
 
 
 36
 (App. 1079). Snee's attorney objected and asked that the questions and answers relating to Winner be stricken, since the government was merely trying to lay a foundation for admissibility of Winner's testimony. The court ruled that because Snee had testified on direct about telephone calls to other bondsmen he had opened the door to the question whether he had ever called Winner. (App. 1080). The cross examination of Snee went no further into the transactions with Winner than the telephone call inquiry. During the later colloquy over admission of Winner's testimony, Snee's attorney, acknowledging that his client had denied calling Winner, conceded that rebuttal limited to the fact of such telephone calls would be proper. The court ruled that Winner would be allowed to testify only to the occurrence of such telephone calls. (App. 1342).
 
 
 37
 At the initial side bar, then, the court ruled that evidence of referrals could be admitted as proper rebuttal against Forsythe, Blaskovich and Snee, but that evidence of uncharged bribes could not be admitted against any of them. The government persisted in its effort to have the court admit Winner's testimony about the other bribe transactions. The court ruled:
 
 
 38
 I will not permit instances of specific crimes for the purpose of rebutting character reputation evidence. I don't think it is proper. I don't think that is what Rule 404 says. Such testimony would be admissible if it were a defense, here, that any payment received were innocently received, but, if I understand, here, the defense is there were no payments. This is not a question of plan, intent or anything else. It is a denial there were any payments made. To prove payments by anybody else, I think, is outside the scope of proper rebuttal, and it will not be permitted.
 
 
 39
 (App. 1333).
 
 
 40
 The government continued to press its point, and the next morning the court reversed its prior ruling on the supposed authority of United States v. Chrzanowski, supra. (App. 1391). This new ruling did not depart from the court's analysis of the Forsythe, Blaskovich and Snee testimony referred to above. Rather, Winner's other crimes testimony was admitted solely on the ground that it was proper rebuttal to character evidence. Our examination of the record confirms what the trial court held, that none of the defendant-appellants made any general denial of wrongdoing which might have justified rebuttal by Winner in the form of evidence of uncharged bribes. Our holding in McCann disposes of the basis on which the testimony actually was admitted. On this record, the Winner testimony was, therefore, inadmissible against all four defendants, even in rebuttal, and its admission was prejudicial error requiring a new trial.
 
 
 41
 The defendants advance several other contentions which may in the course of that trial recur.
 
 
 42
 Magistrate France urges that admission of the Levitt Agency records violated the best evidence rule. That objection is meritless. United States v. Vandersee, 279 F.2d 176 (3d Cir. 1960), Cert. denied, 364 U.S. 943, 81 S.Ct. 463, 5 L.Ed.2d 374 (1961).
 
 
 43
 Magistrate Forsythe argues that the trial court erred in failing to charge the jury on elements of a lesser included offense, a misdemeanor under Pennsylvania law, of accepting a fee or compensation for obtaining a bondsman, or of deriving a profit from a bonding business. Pa.Stat.Ann. tit. 19 § 90.10(c), (e) (Purdon). He points out that under RICO the predicate state offense must be a felony. His theory is that he should have been able to argue to the jury that, while he may have been guilty of the misdemeanor, he was not guilty of the felony, and should therefore have been acquitted on the RICO charge. Forsythe would have us misapply the lesser included offense doctrine. It is clear that the state law misdemeanor offense is Not included in the RICO offense since, if the defendant is not guilty of a state law felony, he is guilty of no federal crime. The purpose of an instruction on a lesser included offense is to give the defendant the benefit, not of the possibility that the jury will find him not guilty, but rather of the additional possibility that it may find him guilty of an offense carrying a less severe sentence. That was not possible here. The court properly charged that the government had to prove each element of the predicate felony before the defendant could be found guilty of anything. A charge respecting an offense of which the defendant could not be found guilty was not required.
 
 
 44
 Forsythe also urges that his motion for a severance should have been granted. We rejected a somewhat similar contention in the McCann and Herman cases, and find it equally without merit here. On this record, no showing of prejudicial joinder has been made out. We have considered each of the additional claims of error and find them to be without merit.
 
 
 45
 The judgments appealed from will be reversed and the cases remanded for a new trial for each defendant.
 
 
 
 [1]
 The prosecution described the evidence as demonstrating "a common scheme and design, all things done in a like manner." (App. 693)
 
 
 [2]
 We have not been able to locate in the record the testimony upon which the district judge relied in reaching this conclusion. Because of our disposition of the issue of the testimony as to uncharged acts of bribery, however, we need not consider this issue further
 
 
 [3]
 Because the court construed the question and answer as insufficient for the invocation of the rule of United States v. Walder, supra, we have no occasion to decide in this case whether that rule is applicable to denials of wrongdoing elicited solely by the government on cross examination for the purpose of opening the door to rebuttal testimony. See Agnello v. United States, 269 U.S. 20, 35, 46 S.Ct. 4, 70 L.Ed. 145 (1925); 3 Weinstein's Evidence P 607(09) at 607-90 (1977) (citing cases)
 
 
 [4]
 Snee's account of his denial of wrongdoing to the FBI (App. 1028), relied on by the prosecution as the basis for a contrary conclusion, is, read in context, limited to a denial of the Levitt transactions