609 F.2d 675
 4 Fed. R. Evid. Serv. 1262
 UNITED STATES of America
v.
Albert C. PANTONE, Appellant in No. 78-1123.*
Nos. 78-1123 to 78-1128 and 78-1170.
 United States Court of Appeals,
Third Circuit.
 Argued May 1, 1979.
Decided July 19, 1979.
 
 Robert J. Cindrich, U. S. Atty., Jeffrey A. Manning (argued), Frederick W. Thieman (argued), James J. West, Asst. U. S. Attys., Pittsburgh, Pa., for appellee.
 Harold Gondelman (argued), Gondelman, Baxter, Mansmann & McVerry, Pittsburgh, Pa., for appellant Albert C. Pantone.
 Thomas A. Livingston (argued), Livingston, Miller, O'Malley & Clark, Pittsburgh, Pa., for appellants Frank Bruno and John Kumer.
 Dennis J. Clark (argued), Livingston, Miller, O'Malley & Clark, Pittsburgh, Pa., for appellant William E. Downey.
 Stanley W. Greenfield (argued), John W. Murtagh, Jr., Pittsburgh, Pa., for appellants John Chapas, Al Chesnos and Dominick Romano.
 Before ADAMS, VAN DUSEN and GIBBONS, Circuit Judges.
 OPINION OF THE COURT
 GIBBONS, Circuit Judge:
 
 
 1
 Six appellants in this case appeal from the judgments of sentence imposed following their conviction by a jury of conspiracy to conduct the affairs of the Levitt bonding agency through a pattern of racketeering activity in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(d), and of the underlying substantive offense, a violation of 18 U.S.C. § 1962(c). The seventh appellant, Frank Bruno, entered a conditional plea of guilty to one count of conspiracy under the RICO statute at the close of the government's direct case. Appeals by other defendants tried separately on the same indictments were before us in United States v. McCann, 589 F.2d 1191 (3d Cir. 1978), and in United States v. Forsythe, 594 F.2d 947 (3d Cir. 1979). These appeals present the same issues which we considered in the McCann And Forsythe opinions, and those decisions are to a large extent dispositive. We affirm the convictions of Frank Bruno (No. 78-1124), John Chapas (No. 78-1125) and William C. Downey (No. 78-1127). We reverse and remand for a new trial in the appeals of Albert C. Pantone (No. 78-1123), Al Chesnos (No. 78-1126), Dominick Romano (No. 78-1128) and John Kumer (No. 78-1170).
 
 
 2
 The government's case against these appellants was substantially identical to that presented in McCann and Forsythe. Steven C. Levitt, who had pled guilty to a violation of 18 U.S.C. § 1962(d), was the government's principal witness. The nature of his evidence is set forth in detail in the McCann opinion. His testimony established that all seven defendants here were magistrates or justices of the peace responsible for fixing bail; that he operated a bail bond agency; that his agency had an arrangement with these magistrates to kick back to them one half of the premium on each bail bond placed in their offices; and that the seven defendants received kickbacks in instances where they fixed bail. Victor Kozlowski, a former bondsman at the Levitt Agency, confirmed Levitt's account in substantial part as to all defendants. Mary Hupert, formerly a secretary at the Agency, provided further corroboration as to Pantone, Bruno, Downey, Kumer and Chapas. Constable Eugene Benedik and FBI Special Agent Robert Hood presented further damaging testimony against Chesnos.
 
 
 3
 During its case in chief the government also proffered the testimony of Jacob Winner, who operated a bail bond agency in Pittsburgh known as the American Bonding Company. The government offered to show that American Bonding Company regularly received referrals from and split premiums with all the magistrates on trial except for Chapas. The government's theory of admissibility of this evidence of uncharged crimes was that it tended to establish a "common scheme and design" in that the crimes were carried out in the same manner as those that had been charged. Fed.R.Evid. 404(b).
 
 
 4
 The district court refused to admit the testimony on that ground, but indicated that it might become admissible in rebuttal. After the defendants had presented their cases, the court admitted the Winner testimony on two theories: as rebuttal to the defendants' character evidence, and as rebuttal to testimony presented by each defendant tending to show that he had not referred defendants to bailbondsmen. 2546a. Winner then testified that he had received referrals from and paid bribes to defendants Kumer, Downey, Pantone, Romano, and Chesnos. The jury was instructed that it could consider the Winner testimony only insofar as it was relevant to the two issues identified by the judge.
 
 
 5
 On this appeal, each defendant raises legal objections (1) to the sufficiency of the state's evidence and the conduct of the trial generally and (2) to the admission of particular items of testimony, including the Winner testimony, against them. To avoid repetition, we first consider the issues common to all appellants. We then consider each appellant's evidentiary objections individually.
 
 I.
 
 6
 All of the defendants contend: (1) that § 1962 is unconstitutionally vague; (2) that a violation of 18 U.S.C. §§ 1962(c) and (d) occurs upon the making of an agreement and is not a continuing offense, and that therefore the offense of conspiracy was committed before the effective date of the statute; (3) that the government's proof at trial established a multiple rather than a single conspiracy; (4) that a judgment of acquittal was required, since the government established neither a Prima facie case of a § 1962(d) conspiracy, nor the commission of the felony of bribery under Pennsylvania law which was the predicate for conviction under § 1962(c); and (5) that the court erred in failing to instruct the jury regarding the elements of a lesser included misdemeanor offense under Pa.Stat.Ann. tit. 19, § 90.10(c), (e) (Purdon 1978).
 
 
 7
 The first four of these contentions were pressed in both the McCann and Forsythe appeals. In both those cases, reviewing the same indictment and a legally indistinguishable evidentiary record, this court rejected those arguments, and we therefore reject them here. The "lesser included offense" claim was raised in Forsythe, and was rejected there. See 594 F.2d at 952. That holding is controlling here.
 
 
 8
 The defendants also argue that the district judge should have granted a mistrial because of juror misconduct. During a Voir dire respecting potentially prejudicial publicity which circulated during the trial juror number 11 testified that she had heard another juror remark, "Well, it sounds like everybody is guilty, or something like that." Another juror testified to a "humorous" comment regarding the defendants' guilt. The judge immediately held a corrective Voir dire during which all jurors stated that nothing had occurred which would influence the verdict or their impartiality. The trial court is obviously in a better position to observe the impact of premature jury discussions of guilt, and to make a considered judgment as to the effectiveness of a cautionary instruction. Our consideration of the entire Voir dire, which suggests that the impact of the two remarks was rather inconsequential, and of the promptness and care with which the trial judge conducted the inquiry, convinces us that his refusal to grant a mistrial was not an abuse of discretion. Certainly the occurrence of the conversations referred to is not ground for an automatic mistrial, and no showing of any likelihood of actual prejudice has been made on this record. See United States v. Klee, 494 F.2d 394 (9th Cir.), Cert. denied, 419 U.S. 835, 95 S.Ct. 62, 42 L.Ed.2d 61 (1974).II.
 
 
 9
 We now turn to the Winner testimony. We consider the defendants' claims in two groups.
 
 A. Bruno and Chapas
 
 10
 Bruno entered a conditional guilty plea to one count of conspiracy in violation of the RICO statute at the close of the government case. The plea came before the Winner testimony was admitted, and Bruno was therefore not prejudiced by that testimony. Since we have found Bruno's other claims of legal error to be without merit, his conviction must be affirmed.
 
 
 11
 Unlike Bruno, Chapas was found guilty by the jury of violations of both 18 U.S.C. § 1962(c) and § 1962(d). But he was not mentioned in the Winner testimony and that testimony was not admitted against him for any purpose. Although Chapas argues that he was prejudiced by the spillover effect of Winner's testimony, our review of the record discloses no instance where such a spillover occurred.
 
 
 12
 Chapas also contends that the court erroneously allowed Levitt to testify concerning bribe taking by other court personnel in the City Police Court where Chapas served as magistrate. At trial, the government conceded that it could not show that Chapas knew of the bribes paid to other court officials, and for that reason the court initially ruled the testimony inadmissible. But later in direct examination of Levitt, while Levitt was explaining his method of payment to Chapas, Chapas' attorney interrupted the questioning to demand an explanation of the payment code which Levitt had used on his files. Explanation of that code required Levitt to reveal that other personnel in the Police Court were taking bribes, and the court permitted Levitt to testify to that effect. In view of the interjection by Chapas' counsel, which cast doubt on Levitt's testimony, the district court did not err in admitting Levitt's explanatory response. Chapas' conviction and sentence will therefore be affirmed.
 
 
 13
 B. Downey, Pantone, Chesnos, Romano, and Kumer
 
 
 14
 Jacob Winner's testimony was admitted against all five of the remaining defendants. One ground of its admission was as rebuttal to the defendants' character testimony. In McCann and Forsythe we held this ground inadequate to permit admission of Winner's testimony regarding uncharged crimes. Fed.R.Evid. 405 forbids the use of specific instances of conduct to prove good or bad character, and hence to rebut evidence of good character, unless character "is an essential element of a charge, claim or defense." Fed.R.Evid. 405(b). No claim is made that character is an essential element of the RICO offenses charged here, and we must therefore reject Rule 405 as a ground of admissibility just as we did in McCann and Forsythe.
 
 
 15
 The court's second ground for admitting the Winner testimony was that it was proper rebuttal to the defendants' self-serving general denials of wrongdoing. Evaluation of that contention requires that the evidence presented by each of the five defendants be examined in detail.
 
 
 16
 Appellant Downey offered the testimony of twenty character witnesses. He also took the stand in his own behalf. During direct examination by his counsel he stated: (1) that he had never referred defendants to bailbondsmen, 2378a, 2383a-84a; and (2) that while he had received envelopes from bailbondsmen containing powers of attorney, there was never any money in the envelopes received from Levitt or any other bondsman. 2387a-88a. These statements constitute a general denial of referrals made to, or bribes taken from, other bondsmen. Winner's testimony to the effect that such referrals and bribes took place was thus proper rebuttal, and the district judge did not err in allowing the jury to consider it for that purpose. Walder v. United States, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954). Downey's conviction and sentence will therefore be affirmed.
 
 
 17
 Chesnos and Romano both testified in their own defense. Both carefully avoided making any general denial of the receipt of payments from bailbondsmen. Both defendants, however, introduced testimony tending to show that it was the general practice in their office not to make referrals. The district judge recognized that neither man had made a general denial of bribe payments but held that Winner's testimony concerning referrals and payments was nonetheless admissible as rebuttal to the denials of referrals, because "the basis for the referral was payment, which goes to the substance of the entire charge here."
 
 
 18
 This ruling was error. We recognize that under the Federal Rules of Evidence the district court has broad discretion to control the admission of rebuttal testimony. See Geders v. United States, 425 U.S. 80, 86, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976); United States v. Benedetto, 571 F.2d 1246, 1250 (2d Cir. 1978). That discretion, does not extend, however, to the admission of testimony that does not rebut anything said by the defendant. In view of the defendants' attempts to show they had made no referrals to any bailbondsman, Winner's testimony that such referrals were in fact made may well have been relevant and admissible in rebuttal. But the defendants nowhere denied the receipt of bribe payments from other bondsmen, and their testimony therefore provided no basis for the admission of evidence of uncharged bribes in rebuttal. In United States v. Forsythe, supra, one defendant, Magistrate Snee, opened the door in a somewhat similar fashion by testifying about phone calls made to bondsmen other than Levitt. On the basis of that testimony, Snee's attorney conceded, and the district court held, that the admission of Winner's testimony as to referrals was proper rebuttal. On appeal, we held that despite his attorney's limited concession, Snee's testimony regarding referrals did not provide a proper basis for the admission of Winner's testimony as to uncharged bribes. 594 F.2d at 951. That holding is controlling here. Admission of the Winner bribe evidence was reversible error.
 
 
 19
 Even if we were to assume the relevance of Winner's bribe testimony in rebuttal, it is clear that its admission was an abuse of discretion. In the exercise of his discretion the district judge must weigh the probative value of rebuttal or impeachment evidence against its potential prejudicial impact under both Rule 403 and Rule 607. 3 Weinstein's Evidence P 607(05) at 607-52 & n.9, 607-55-56 (1977); See generally, United States v. Long, 574 F.2d 761, (3rd Cir.), Cert. denied, 439 U.S. 985, 99 S.Ct. 577, 58 L.Ed.2d 657 (1978). The need to give careful consideration to the potential for prejudice is magnified when the evidence offered in rebuttal would normally be barred under Rule 404(a), and where, as here, the evidence was objected to as unduly prejudicial. See United States v. McCann, supra, 589 F.2d at 1198. Here, the balance was heavily weighted against admission of the bribe testimony. Winner's evidence of bribe payments did not directly rebut the defendants' denials of referrals. Insofar as it did so indirectly, its probative value was slight and cumulative to Winner's testimony concerning referrals. Moreover, its prejudicial effect was substantial, for while making referrals was not criminal, the receipt of bribes was.
 
 
 20
 Pantone presents an even stronger case for reversal. In his testimony he made no general denial of either referrals or bribes. On cross-examination he was asked:
 
 
 21
 Q. Sir, you indicated in answer to Mr. Grigsby's question that you didn't refer individuals to bondsmen. How would an individual obtain a bondsman in your office?
 
 
 22
 1385a. Pantone's counsel objected to this question as an inaccurate characterization of the direct testimony. That objection was well taken, since there is no hint in Pantone's prior testimony of a general denial of referrals. The district court nevertheless overruled the objection and permitted the government to elicit a denial of referrals. In Kumer's appeal, Infra, we disapprove of the practice of using cross-examination beyond the scope of the direct testimony for the purpose of laying a foundation for the introduction, as rebuttal, of otherwise inadmissible evidence. But even if we were to countenance that practice, Pantone's denial of referrals was no basis for the admission of Winner's testimony as to bribes.
 
 
 23
 In their direct examination, Chesnos and Pantone admitted the receipt of payments from Levitt, but each testified that he believed those payments to have been made gratuitously. Arguably, then, the Winner testimony might have been admitted against both defendants under Rule 404(b) as relevant on the issue of their state of mind when they accepted those payments. This argument, however, was not pressed by the government either in the district court or on this appeal. Since there was no offer of proof on that theory the district court had no opportunity to consider its relevance under Fed.R.Evid. 404(b), or to weigh under Fed.R.Evid. 403 its value for that purpose against the danger of unfair prejudice or confusion. The government's failure to press the issue also deprived the defendants of the opportunity to request an appropriate limiting instruction in the event of a ruling admitting the testimony on a state of mind theory. And, of course, no instruction was given regarding the state of mind issue. The potential unfairness of adopting a new theory of admissibility on appeal is therefore substantial. See United States v. O'Connor, 580 F.2d 38, 42 & n.9 (2d Cir. 1978). We have no occasion in this appeal to consider whether, upon a record in which the district court and the defendants had an opportunity to address the point, other crimes evidence might have been admitted as bearing on the state of mind of defendants in committing the acts charged in the indictment. The evidence here was admitted on an impermissible theory with erroneous instructions,[1] and we are unprepared to salvage that error by assuming that the jury perceived that the Winner testimony might be relevant to the state of mind issue. The failure of the prosecution and the district judge to perceive or articulate that theory is persuasive evidence that the jury did not. The convictions of Magistrates Chesnos, Pantone, and Romano must therefore be reversed, and their cases remanded for a new trial.
 
 
 24
 Magistrate Kumer, in his direct testimony, denied making referrals to bailbondsmen from his office. His attorney conceded in the district court that this denial would permit the admission of Winner's testimony that such referrals were made to him. App. 2524. But Kumer made no denial, in his direct testimony, of bribetaking from bailbondsmen other than Levitt. Thus insofar as Kumer's direct testimony is concerned he is situated, with respect to Winner's other crimes evidence, identically with Pantone, Chesnos, and Romano.
 
 
 25
 On cross-examination, however, the government sought and obtained a more sweeping denial of wrongdoing:
 
 
 26
 Q. You never charged any bondsman anything in connection with bonds written at your office?
 
 
 27
 A. No, never.
 
 
 28
 Q. And you never received anything in connection with that?
 
 
 29
 A. Never.
 
 
 30
 Q. From any bondsmen?
 
 
 31
 A. Never.
 
 
 32
 1657a. This general denial of the receipt of bribes is relied upon by the government to justify the admission in rebuttal of Winner's other crimes evidence.
 
 
 33
 The doctrine of Walder v. United States, supra, as preserved in Fed.R.Evid. 607, gives a trial judge discretion to admit otherwise inadmissible extrinsic evidence tending to contradict any specific testimony volunteered to by a witness on direct examination. But we do not think that the rationale of the Walder ruling extends to statements elicited in a cross-examination going beyond the scope of the direct examination. In Walder the defendant in a narcotics case testified on direct examination that he had never in his life sold, given away, or even possessed narcotics. On cross-examination he was asked about heroin that had been unlawfully seized from him by federal officers several years before. When he denied the seizure the government was permitted to present rebuttal testimony establishing it. This rebuttal testimony was admitted solely for impeachment purposes. The Supreme Court approved its admission, observing that Walder, "of his own accord . . . went beyond a mere denial of complicity in the crimes of which he was charged and made the sweeping claim that he had never dealt in or possessed any narcotics." 347 U.S. at 65, 74 S.Ct. at 356. The Court stressed the fact that the defendant had taken the initiative in placing the perjurious denial before the jury. Nothing in the Walder Decision suggests that it authorizes the government to elicit denials on collateral issues during cross-examination to lay a trap which will be sprung in rebuttal. See 3 Weinstein's Evidence P 607(05) at 607-58 (1977). Indeed the Walder Court made extensive approving references to Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145 (1925), where such tactics were expressly disapproved. In Agnello a defendant in a narcotics prosecution was asked for the first time on cross-examination whether he had ever seen cocaine. When he made the expected denial the government introduced a can of cocaine illegally seized from his home. The tactic was unavailing. The Supreme Court held:
 
 
 34
 In his direct examination, Agnello was not asked and did not testify concerning the can of cocaine. In cross-examination, in answer to a question permitted over his objection, he said he had never seen it. He did nothing to waive his constitutional protection or to justify cross-examination in respect of the evidence claimed to have been obtained in the search.
 
 
 35
 Id. at 35, 46 S.Ct. at 7.
 
 
 36
 A central principle of the Agnello ruling is that the government may not cross-examine on collateral matters not testified to on direct in order to establish a ground for the admission of otherwise inadmissible evidence. While Walder and Agnello in terms apply only to evidence barred by the exclusionary rule, we think that an analogous principle should apply to evidence that would otherwise be inadmissible under Rule 404. The policy behind Rule 404 is that a defendant should be confronted at trial only with that evidence of uncharged crimes which is relevant to his responsibility for the charged crime. United States v. Cook, 538 F.2d 1000, 1004 (3d Cir. 1976); United States v. Benedetto, 571 F.2d 1246, 1248 (2d Cir. 1978). Where the government has not demonstrated that evidence of other crimes is relevant to a contested issue bearing on the defendant's guilt, or as impeachment to false testimony offered by the defendant, we think that the affirmative policy of Rule 404 is best served by a rule that bars the government from creating the conditions that justify the admission of uncharged crimes whenever the defendant takes the stand.
 
 
 37
 This principle is fully consistent with the policy of the Federal Rules of Evidence. The general rule still is that "(c)ross examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness." Fed.R.Evid. 611(b). If we were to construe Rule 611(b) as permitting cross-examination with respect to other crimes solely for the purpose of creating credibility issues we would present a defendant who takes the stand with the Hobson's choice of admitting prior uncharged acts of misconduct or of opening the door to presentation of evidence of such acts in rebuttal. The net effect of such a rule would be to permit the introduction of specific acts of prior misconduct whenever a defendant took the stand. That result could not be squared with the provisions of Rule 404(b) limiting the uses to which other crimes evidence may be put, or with our holdings in United States v. Long, 574 F.2d 761 (3d Cir. 1978), Cert. denied, 439 U.S. 985, 99 S.Ct. 577, 58 L.Ed.2d 657 (1978), and United States v. Cook, 538 F.2d 1000 (3d Cir. 1976), that such evidence must be evaluated under Fed.R.Evid. 403 for undue prejudice, confusion of issues, or needless presentation of cumulative evidence. For these reasons federal courts which have considered the question have limited use of otherwise inadmissible evidence for impeachment by contradiction "to contradiction of specific false statements made by defendants on direct examination," 3 Weinstein's Evidence P 607(09) at 607-09 (1977) (citing cases); See United States v. Benedetto, 571 F.2d 1246, 1250 (2d Cir. 1978), or to statements volunteered by the defendant on cross-examination. United States v. Wright, 542 F.2d 975, 981 (7th Cir. 1976). Thus we hold that the government's questions on cross examination and Kumer's answers quoted above do not provide a basis for distinguishing his case from those of Pantone, Chesnos, or Romano. Kumer is therefore entitled to a new trial.
 
 CONCLUSION
 
 38
 The judgments appealed from in the cases of Frank Bruno (No. 78-1124), John Chapas (No. 78-1125) and William E. Downey (No. 78-1127) will be affirmed. The judgments of sentence in the cases of Albert C. Pantone (No. 78-1123), Al Chesnos (No. 78-1126), Dominick Romano (No. 78-1128) and John Kumer (No. 78-1170) will be vacated and their cases remanded for a new trial.
 
 
 39
 VAN DUSEN, Circuit Judge, dissenting in part:
 
 
 40
 I respectfully dissent as to defendants Chesnos and Pantone, and would vote to affirm the judgments of sentence entered against these defendants.
 
 
 41
 * Both of these defendants made general denials that they had referred criminal defendants to particular bail bondsmen. When asked about such referrals, they presented substantially the same story: that their standard office procedure was to hand criminal defendants a phonebook so that they could find their own bondsman. E. g., N.T. 1375-77 (Pantone); 2166-67 (Chesnos).
 
 
 42
 This trial differed from the earlier trial of the defendants whose appeals were considered in United States v. Forsythe, 594 F.2d 947 (3d Cir. 1979), in a crucial respect. Here the district court expressly based admission of Winner's testimony on the ground that his testimony, including testimony about payments in consideration for referrals, rebutted defendants' general denials that they had ever referred criminal defendants to particular bondsmen.[1] It limited the jury's consideration of the Winner testimony accordingly, using this language, Inter alia :
 
 
 43
 " . . . your determination of the character of the Defendant and whether that character is such that it raises a reasonable doubt in your mind that the Defendant is guilty of the crime charged, Or in the consideration of the denial by the Defendant that they ever referred criminal defendants to particular bondsmen.
 
 
 44
 "You cannot use the testimony of Jacob Winner for any other purpose except as rebuttal to the character testimony And to impeach the magistrates' testimony that they never referred criminal defendants to any bondsman . . . ."
 
 
 45
 (N.T. 2766; emphasis supplied)
 
 Later the court repeated:
 
 46
 "You cannot use that testimony of Jacob Winner, as I have said, for any purpose except to weigh it against his testimony of good character And that these magistrates never referred criminal defendants to bondsmen. . . ."
 
 
 47
 (N.T. 2810-11; emphasis supplied)The admission of extrinsic, other-crimes testimony for the purpose of rebutting general denials of wrongdoing in circumstances such as these is in general a matter for the broad discretion of the trial court. United States v. Long, 574 F.2d at 767; 3 J. Weinstein, Evidence 607-52, 607-56; see Geders v. United States, 425 U.S. 80, 86-87, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976). On this principle, the majority and I agree. See first paragraph on pages 680-681 of majority opinion. We differ only in our perceptions as to whether that broad discretion of the trial judge was abused in this particular case. I do not find such abuse with regard to the abovementioned defendants.
 
 
 48
 It is true that the district court initially ruled in the Forsythe Trial that Winner's testimony about referrals was admissible to rebut general denials of referrals, but that testimony about payments was not. Forsythe App. 1326, 1332. In the trial of this case, however, with different defendants, a different jury, and different details of defense evidence, the district court concluded that "the basis for the referral was payment" and ruled that evidence of payments was also admissible to rebut denials of referrals (N.T. 2547). The record as a whole indicates that the district court fully considered the relevance of payment evidence for rebutting denials of referrals, See Fed.R.Evid. 401, and concluded that payments and referrals were virtually inseparable. The record as a whole also shows that the court adequately balanced the probative value of such testimony against its prejudicial potential within the unique evidentiary context of this case. See Fed.R.Evid. 403. I cannot say that the district court's ruling was an abuse of discretion merely because its exercise of discretion in this trial resulted in a ruling superficially opposite from that made in an entirely separate trial.
 
 
 49
 Contrary to what the majority asserts at pages 680-681 of the majority opinion, our holding in Forsythe, 594 F.2d at 591, is not "controlling" on the question of whether it was improper to admit payment evidence to rebut denials of referrals on the record applicable to Chesnos and Pantone. The scope of our appellate review on this issue is limited to ascertaining whether an abuse of discretion occurred. Therefore, the broadest "holding" that this court could have made in Forsythe was that the district court did not abuse its discretion in its preliminary ruling that Winner's testimony in the Forsythe trial should be limited to referral evidence. Such a "holding" does not preclude us from concluding that a different ruling of the district court in a subsequent trial of different defendants was also within the scope of its broad discretion as to evidentiary matters. As to Chesnos and Pantone, I would so conclude.[2]
 
 II
 
 50
 The majority also relies, at page 683 of its opinion, upon Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145 (1925), to establish what appears to be a per se rule excluding extrinsic evidence to rebut statements made on cross-examination, even though such evidence was not illegally obtained. However, Agnello was a decision based on the exclusionary rule for illegal evidence, not on the general law of evidence.[3] It can support the majority's per se rule only by analogy, not by direct authority. Judge Weinstein's treatise, contrary to the majority's assertion, proposes the apparently sounder rule that the elicitation of a general denial on cross-examination, as opposed to direct examination, is merely one factor which a district court should consider in determining whether to admit extrinsic rebuttal evidence under Fed.R.Evid. 403. 3 J. Weinstein, Supra, 607-57 to 607-58. Such an approach preserves sufficient flexibility to allow the district court in its discretion to admit other crimes evidence by way of rebuttal where, E. g., the defendant volunteers a denial of wrongdoing on cross-examination.
 
 
 
 *
 Frank Bruno, Appellant in No. 78-1124; John Chapas, Appellant in No. 78-1125; Al Chesnos, Appellant in No. 78-1126; William E. Downey, Appellant in No. 78-1127; Dominick Romano, Appellant in No. 78-1128; John Kumer, Appellant in No. 78-1170
 
 
 [1]
 As we have noted, Supra at p. 678, the judge permitted the jury to consider the Winner testimony as rebuttal to denials of referrals and as rebuttal to character testimony. Both of these grounds of admissibility were erroneous
 
 
 [1]
 The trial judge used the following language (N.T. 2545-2547):
 "I am going to overrule the objection to the offer of Jacob Winner as to all Defendants.
 "I have been reviewing the record. Every one of the Defendants, including Mr. Pantone and Mr. Kumer, denied the referral of defendants, and I think it is admissible in direct rebuttal.
 "I am going to let it go in, the payments to all Defendants.
 "Well, the basis for the referral was payment, which goes to the substance of the entire charge here."
 
 
 [2]
 Because of the language used by the Government in its cross-examination of Kumer, which is quoted by the majority at page 11 of its opinion, I cannot dissent from the grant of a new trial to that defendant. The Government need not adopt such tactics in its role as a public prosecutor. See, e. g., McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943); United States v. Somers, 496 F.2d 723, 736-37 (3d Cir. 1974)
 Since I have been unable to find such sweeping denials of referrals by Romano in his testimony as are present in the testimony of Chesnos and Pantone, his situation is distinguishable from that of these two defendants.
 
 
 [3]
 While a rule of evidence is necessarily contained in the holding of Walder v. United States, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954), it is inaccurate logic to assume the same about Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145 (1925). Agnello states a proposition about the exclusionary rule and can only support a proposition about general evidence law by analogy