# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
BURTON, HAGLER, and FLEMING
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private E2 DANIEL I. AVILA**
**United States Army, Appellant**

ARMY 20160200

Headquarters, 1st Cavalry Division (Rear)(Provisional)
Douglas J. Watkins, Military Judge
Lieutenant Colonel Michael D. Jones, Acting Staff Judge Advocate

For Appellant: Lieutenant Colonel Tiffany M. Chapman, JA; Captain Joshua B. Fix, JA; Captain Bryan A. Osterhage, JA (on brief); Major Jack D. Einhorn, JA; Captain Bryan A. Osterhage, JA (on reply brief).

For Appellee: Lieutenant Colonel Eric K. Stafford, JA; Major Virginia Tinsley, JA; Captain Natanyah Ganz, JA (on brief).

23 October 2018

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

FLEMING, Judge:

In this appeal, we find the military judge did not abuse his discretion in denying trial defense counsel's request for a mistrial based upon alleged member misconduct prior to deliberations on findings.

An officer panel sitting as a general court-martial convicted appellant, contrary to his pleas, of two specifications of sexual assault and one specification of obstructing justice in violation of Articles 120 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 920, 934 (2012) (UCMJ). The convening authority approved the adjudged sentence of a dishonorable discharge, confinement for two years, forfeiture of all pay and allowances, and reduction to the grade of E-1.

This case is before us for review pursuant to Article 66, UCMJ.  Appellant raises four assignments of error, one of which merits discussion but no relief.  Appellant personally raises five matters pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), which do not warrant discussion or relief.

## BACKGROUND

After the close of the presentation of evidence on findings, the military judge explained to the panel members the procedural steps before releasing them for the evening.  The military judge told the panel he would instruct them on the law the following morning, they would hear closing arguments from counsel, and then they would begin deliberations.  Right before releasing the members, the military judge asked if there were any questions, which prompted the following exchange:

> Member [MAJ L]: The sentencing phase, as well, Your Honor?
>
> MJ: Well, that totally depends on the findings.  If the accused is acquitted, there won't be any sentencing phase.
>
> Member [MAJ L]: Okay, all right, good.
>
> MJ: But if there are sentencing proceedings, when we do that depends on when you make your findings and there's no standard--there's no time standard for that. It just--basically, I can't answer your question because it all depends.
>
> Member [MAJ L]:  Okay.

After the members were released, the military judge took up other business in an Article 39(a), UCMJ, session, and asked both parties if there was anything else before they recessed.  Neither the defense counsel nor the trial counsel had anything to offer.

The next morning in an Article 39(a), UCMJ, session, the military judge summarized what took place at a Rule for Courts-Martial [R.C.M.] 802 session where a host of issues were addressed, including MAJ L's question.  The military judge stated the member was "probably inquiring . . . to have a general idea of a possible timeline. . . as two panel members have leave starting tomorrow and this case was only docketed through today."  The military judge went on to say "[h]owever, it is not an unreasonable interpretation that [MAJ L] may already have a preconceived idea that the accused is guilty, which of course, would be improper at this stage of the trial."  Based on that, the military judge informed counsel that he

would voir dire the MAJ L.  Both parties agreed to the military judge's summarization of the R.C.M. 802 and had nothing else to offer.  Directly prior to calling MAJ L, defense consel requested the military judge ask MAJ L the following questions:

> DC: Whether the member has already made a decision and no longer has an open mind, or however you'd like to phrase that, sir.
>
> MJ: What I'd like to do is voir dire [MAJ L] individually.
>
> DC: Yes, sir.
>
> MJ: And part of that will be if there is any discussion about coming to any conclusion.
>
> DC: Yeah, and--exactly sir.  Whether they've had discussion on the case and then as far as the other panel members, what was the impact on his statement on them, and you know, the fact if they've already made a decision about guilty, or innocence, sir.
>
> MJ: All right . . . .

The military judge then called MAJ L in, did exactly what was discussed with defense counsel, and asked exactly what defense counsel requested.  First, the military judge asked an opened-ended question of the member to clarify why he asked the question about sentencing.

> A [MAJ L]: Just procedural, sir. That's the reason I was asking.
>
> MJ: Okay.  Have you formed any opinion about the accused?
>
> A: No, there are still some questions that I have that I'm mulling through my mind, so no, I have not formed an opinion.
>
> MJ: And you understand that would be improper because you haven't been instructed on the law yet?
>
> A: Yes, sir.
>
> MJ: All right. Have you had any discussions about the merits of this case with the other members?

A: We have had some discussions, yes.

MJ: Of evidence or of guilt or innocence?

A: Of evidence.

MJ: Is that in the nature of debates or just comments?

A: Comments mostly, sir.

MJ: You understand that the only opinion you can have at this point in the trial is that the accused is innocent until proven guilty?

A: Yes, sir.

MJ: All right. Does either party wish to voir dire [MAJ L]?

ATC: No, sir.

DC: No, sir.

At this point, the military judge called in the remaining panel members, and the following colloquy took place.

Members, I called [MAJ L] in here to ask him some questions and they related to a question he had in court yesterday. He asked something to the effect of when sentencing proceedings would occur when I was discussing the timeline for the morning. And my concern is that could be interpreted as an indication that he may have already formed an opinion on guilt and innocence. It could also be interpreted, which I believe is the correct interpretation, that he was just concerned about procedurally whether we were going to be finished today because the case was docketed to end today and I know that at least a couple of members have leave starting tomorrow. And he stated that he was only asking for procedural reasons. Did anyone interpret his question as an opinion on guilt?

That's a negative response from all members.

Does everyone understand that the accused is still presumed innocent of the offenses?

. . .

That's an affirmative response from all members.

The military judge went on to give a lengthy curative instruction reminding the panel members of their obligation to keep an open mind, to impartially weigh evidence, and to wait until everyone was together to deliberate. All panel members agreed they understood these instructions. The military judge asked if either side wished to voir dire the members further. Neither side wished to do so. The members were then excused for a short recess, at which time an Article 39(a) session took place and defense moved for a mistrial.

The defense argued the members had already made up their minds, and that because they had not followed the military judge's instructions to not discuss the case, they would likely not follow the instructions the judge was about to give them. After the government articulated the reasons why they believed a mistrial was not appropriate, including that MAJ L specifically indicated he had not formed an opinion regarding guilt or innocence, the military judge ruled, stating:

> But it doesn't surprise me at all that new members might make some comments on the evidence that they heard, despite the instruction, which is one instruction in a pretty voluminous set of instructions at the beginning of trial. That doesn't make it proper but it's natural to expect that with a new panel. With that said, all the members said that they had not formed an opinion about the accused's guilt and agreed that he was presumed innocent at this point in the trial and they all said they would follow my instructions and I believe the curative instruction impressed upon them the importance of not discussing the case and not forming any opinions until they've heard all the evidence and the instructions on the law. So while it's unfortunate that this happened, I don't think that a mistrial is manifestly necessary in the interest of justice. I believe the curative instruction is sufficient to bring the attention of the members the importance of following the instructions and not forming opinions.

## LAW AND DISCUSSION

We review a military judge's decision in the context of inquiring into member's conduct during proceedings or deliberations for an abuse of discretion.

*United States v. Lambert*, 55 M.J. 293, 296 (C.A.A.F. 2001). "In making the determination whether to investigate [alleged court member misconduct] and what kind of investigation to make, as well as whether and to what extent the conduct was prejudicial, the trial court has wide discretion." *Id*. at 295 (citation omitted). Our superior court has held that "a mistrial is an unusual and disfavored remedy. It should be applied only as a last resort to protect the guarantee for a fair trial." *United States v. Short*, 77 M.J. 148, 150 (C.A.A.F. 2018) (*quoting United States v. Diaz*, 59 M.J. 79, 90 (C.A.A.F. 2003)). See also *United States v. McFadden*, 74 M.J. 87 (C.A.A.F. 2015). Moreover, "[b]ecause of the extraordinary nature of a mistrial, military judges should explore the option of taking other remedial action, such as giving curative instructions." *Id*. (*quoting United States v. Ashby,* 68 M.J. 108, 122 (C.A.A.F. 2009)).

In the instant case, the impetus for voir diring MAJ L was his question to the court regarding sentencing. When the military judge asked him what he meant by that question, MAJ L was clear that he was simply asking a procedural question. From there, the military judge explored whether MAJ L had formed any opinions, to which MAJ L said he had not and was still actively contemplating certain questions in his own mind. From there, the military judge explored whether any discussions had taken place between MAJ L and any other members. When he learned they had, the military judge inquired about the nature of those discussions. According to MAJ L they were not opinions or comments on guilt or innocence, rather they were comments about certain evidence. Even still, the military judge inquired if the member was engaging in premature deliberations in the form of debates, or simply comments about evidence. The member replied they were comments not debates. Afterwards, the rest of the panel was called in and no other member considered the original question from the member regarding sentencing to be an opinion on guilt.

Defense counsel made no further request for the military judge to voir dire MAJ L or the remainder of the panel. Nor, did defense counsel take the military judge up on his offer for an opportunity to personally conduct additional voir dire.

Appellant urges us to find that military judge's actions where similar to those in *United States v. Resko*, 3 F.3d 684 (3d Cir. 1993), and to therefore find the military judge abused his discretion by failing to conduct an adequate inquiry. For the first time on appeal, appellant suggests the military judge should have inquired into who else was involved in the discussions, as well as the timing, duration, and frequency of those discussions. Appellant suggests the military judge ceded his authority to the panel members to determine whether there was prejudice.

In *Resko*, the juror misconduct was discovered mid-trial, seven days into a nine-day trial. The jurors had been continually instructed not to discuss the case until the close of trial, and after being formally instructed. *Id*. at 687. On the seventh day, one of the jurors told a court officer that other jurors had been discussing the case during breaks. The court officer informed the trial judge, who then informed counsel. Defense counsel asked for individual voir dire to discover what had been discussed and what prejudice the premature deliberations might have caused. Barring that, they moved for a mistrial. *Id*. at 687-88. The judge denied both motions and decided to gather the jurors together, and give them a written questionnaire with two questions. The first question asked if they had participated in discussing the facts of the case with any other juror. The second question asked, if so, had they formed an opinion about the guilt or innocence of either of the two-defendants as a result of those discussions. *Id*. at 688. Every single juror replied they had participated in discussions, but they had not formed an opinion as to guilt or innocence. Based on the results of the questionnaire, the defense moved again for a mistrial. The court denied the mistrial. Both defendants were convicted of two offenses.

The appellate court struggled with balancing the broad discretion of the trial court in addressing intra-jury misconduct against the failure of the court to conduct additional inquiry once it determined the pervasiveness of the premature discussions. Ultimately, the court vacated and remanded the case because the trial judge abused his discretion by not engaging in further inquiry, "such as individualized voir dire -- upon which it could have determined whether the jurors had maintained open minds," and there was prejudice to the defendants. *Id*. at 691. In so doing, the *Resko* court noted that its ruling was in line with its sister circuit which held a judge in similar circumstances should: "ascertain whether the misconduct actually occurred; if it did, determine whether it was prejudicial; and if there are no grounds for a new trial, specify the reasons it decided that misconduct did not occur, or occurred but was not prejudicial." *Id*. (*citing United States v. Richman*, 600 F. 2d 286, 295 (1st Cir. 1979)).

This case is distinguishable from *Resko* in many respects. First, the misconduct was discovered inadvertently, when one member asked a procedural question regarding the next day's order of events after both sides had rested.* The

---

* Like the military judge, we read nothing into the MAJ L's question about sentencing, other than he was apparently the only member who previously sat on a court-martial and was inquiring about the procedural next steps. We are confident in this assessment because of the open-ended question the military judge posed during

(continued . . .)

military judge could have ended his query of the member at this point, but he delved further, unlike in *Resko*. It is at this point the intra-jury misconduct was discovered. But unlike in *Resko*, MAJ L answered that his comments were about evidence, not guilt or innocence. Additionally, the military judge held lengthy discussions with counsel both on the record and in a R.C.M. 802 hearing regarding what to do about this matter. When defense counsel asked to provide input regarding the military judge's decision to voir dire the member on this issue, the military judge allowed it, unlike in *Resko*. As mentioned earlier, the military judge asked precisely the questions defense counsel requested. While at first blush it appears the questions the military judge asked the entire panel appear similar to the questionnaire in *Resko*, it is not the questionnaire the appellate court found to be in error. It was that the jurors were gathered together and left alone to answer the questions as a group, leaving open the opportunity for further misconduct. Here, the panel members were in open court and had no opportunity for group discussion. Finally, and perhaps most notably different from *Resko*, the military judge provided both sides the opportunity to conduct their own voir dire of the entire panel. Both counsel declined that opportunity.

We too recognize the broad discretion the trial court had in this matter. The military judge, was apparently satisfied, and "obviously in a better position (than the appellate court) to observe the impact of premature jury discussions . . . and to make a considered judgement as to the effectiveness of a cautionary instruction." *Resko*, 3 F.3d at 690 (*quoting United States v. Pantone*, 609 F. 2d 675, 679 (3d Cir. 1979)). In light of this broad discretion and the thorough curative instruction that was given, we do not find the military judge abused his discretion.

## CONCLUSION

The findings and sentence are AFFIRMED.

Senior Judge BURTON and Judge HAGLER concur.

---

(…continued)
individual voir dire of the member, as well as the circumstances surrounding the question itself and the timing of the question.

AVILA—ARMY 20160200



FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court