**UNITED STATES OF AMERICA, Plaintiff**
**v.**
**DAREL HERBERT, Defendant**

Criminal No. 1994-73

District Court of the Virgin Islands

Div. of St. Thomas and St. John

March 9,1995

MOORE, *Chief Judge*.

### ORDER

This matter came before the Court on July 5, 1994 for a hearing on the defendant's motion to suppress. At the close of the hearing, the Court ordered the parties to submit post-hearing briefs on certain issues, which were filed by the United States on July 15, 1994 and by defendant on August 4, 1994. At that time the parties appeared to be in substantial agreement that the questions presented would be controlled in large part, if not entirely, by the then prospective ruling of the Court of Appeals on this Court's earlier granting of motions to suppress in *United States v. Hyde*, 29 V.I. 106, 1993 U.S. Dist. LEXIS 20047 (D.V.I. Oct. 21, 1993). As the Court was about to issue its ruling in the instant case, the Third Circuit

reversed our ruling in *United States v. Hyde, Gray, and Boothe*, No. 93-7790, 1994 WL 524527 (3d Cir. September 28, 1994), thus upholding the propriety of "border searches" at the airport of persons travelling from the Virgin Islands by direct flight to the mainland United States. On November 23, 1994, the Court directed the parties to submit further briefing on the question whether any non-Fourth Amendment, fundamental rights of the defendant were violated by the "border search" of his person and possessions.

The Court of Appeals focused on the ORGANIC ACT OF 1917 ("1917 Organic Act"), specifically, section 3 thereof, to conclude that Congress had established an internal "customs" border between the newly-acquired, unincorporated Territory of the Virgin Islands and the continental United States. Finding this "customs" border to have the indicia of a true, geographic, international border, the Third Circuit held searches without probable cause of persons traveling to the United States from the Virgin Islands to be reasonable and thus not in violation of the Fourth Amendment. The Court of Appeals' analysis of the 1917 ORGANIC ACT, however, brought into issue other provisions of that Act and the imposition of such "border searches" by the Customs Service upon travelers passing only in one direction across this "customs" border.

Section 4 of the 1917 ORGANIC ACT expressly kept in force in the Virgin Islands all antecedent Danish customs laws and regulations,[1] directing "officials of the Customs and Postal Services of the United States" to assist in the collection of taxes on merchandise arriving herein. Taken together, and applying the Third Circuit's analysis, sections 3 and 4 of the 1917 ORGANIC ACT of the Virgin Islands thus create a two-way "customs" border between the Virgin Islands and the mainland.

Although not presented by the facts of the *Hyde* case, the Third Circuit nevertheless offered an advisory ruling that the United States Customs Service is authorized to conduct a "preclearance" border search under 19 U.S.C. § 1467, as implemented by 19 C.F.R. § 122.44. Under these regulations, only travelers from the Virgin

---

[1] Section 4 did alter one Danish customs law by mandating a six dollar per ton export duty on sugar from Saint Croix.

Islands to the mainland United States are subjected to such border searches, whether effected after passing over the internal, "customs" border and touching down again on United States soil, or during "preclearance" here in the Virgin Islands. United States Customs officials thus deploy the weapon of warrantless searches in their war to protect residents of the mainland United States from contraband, drugs and weapons arriving from the Virgin Islands.

■ By contrast, this potent weapon is not routinely available to federal officials and our underpaid and overworked Virgin Is lands law enforcement officers in their efforts to interdict the importation of harmful items into, and to protect the residents of, this small community. Thus, even though a two-way customs border was created by sections 3 and 4 of the ORGANIC ACT OF 1917, the United States Customs Service systematically patrols the border in only one direction.[2] The net result then, in both design and practice, is a treatment of the Virgin Islands, her citizens and residents, disparate from the protections afforded mainlanders.

■ The instant case, however, does not bring these issues properly before the Court. Since all persons travelling from the Virgin Islands to the mainland United States are potentially subject to a "border" search at the Cyril King Airport, the defendant does not have standing to complain of disparate treatment, an essential element of the analysis of equal protection violations. Proper resolution of this glaring problem, then, awaits legislative reform or other legal action initiated by some suitable representative of the citizens and residents of the Virgin Islands.

After careful review of the Third Circuit's *Hyde* opinion and the parties' submissions, the Court finds that defendant's motion to suppress must be denied. The manifest injustice which results from the practice of one-way border searches remains a question which is not justiciable on the facts of this case.

The time elapsed since the filing of the motion to suppress is excluded from computation pursuant to the mandates of the

---

[2] This is so even though Customs agents and Virgin Islands police, as well as the federal courts, recognize that such warrantless border searches apply to travel into the customs zone of the Virgin Islands from elsewhere in the geographic *United States*. *United States v. Chabot*, 19 V.I. 28, 37, 531 F. Supp. 1063, 1069 (D.V.I. 1982).

Speedy Trial Act as authorized by TITLE 18, U.S.C.S. § 3161(h)(F) (1993). It is hereby

ORDERED that defendant's motion to suppress is DENIED.

ENTERED this 9th day of March, 1995.