**GREGORY TURBE, Appellant**

**v.**

**GOVERNMENT OF THE VIRGIN ISLANDS, Appellee**

D.C. Crim. App. No. 2004-179

District Court of the Virgin Islands

Division of St. Thomas and St. John

February 25, 2008

SAMUEL H. HALL, JR., ESQ., St. Thomas, U.S.V.I., *For the Appellant.*

MAUREEN PHELAN, AAG, St. Thomas, U.S.V.I., *For the Appellee.*

GÓMEZ, *Chief Judge of the District Court of the Virgin Islands*; FINCH, *Judge of the District Court of the Virgin Islands*; and D'ERAMO, *Judge of the Superior Court of the Virgin Islands, Division of St. Croix, Sitting by Designation.*

## MEMORANDUM OPINION

(February 25, 2008)

Gregory Turbe ("Turbe") appeals his fifteen year imprisonment sentence imposed by the Superior Court of the Virgin Islands, Division of St. Thomas and St. John (the "Superior Court")[1] following his conviction for one count each of unauthorized possession of a firearm, unauthorized possession of ammunition, and possession of stolen property valued in excess of one hundred dollars.

## I. FACTS

In July, 2002, Eustace Farrell ("Farrell") noticed that his 0.40 caliber stainless steel Smith & Wesson, Model #4006TSW, serial #TDT26, was missing from his residence. Turbe reported the gun missing.

On the night of September 12, 2003, the Virgin Islands Police Department received a report by Andrew Julian ("Julian") that Turbe had struck him in the head with a pistol in the Ulke Gade area of St. Thomas, on lower Krondprindsens Gade. The responding officers, including Sergeant Dwayne DeGraff, who had known Turbe personally since childhood, proceeded at Simmonds Grocery in the Ulke Gade area to investigate the reported assault. As the police arrived, Sergeant DeGraff saw Turbe enter Simmonds Grocery and then walk back out of the store. Sergeant DeGraff encountered Turbe outside, in front of the store, where he took a beer bottle out of Turbe's hand. Sergeant DeGraff passed Turbe off to the other officers, and then checked inside Simmonds Grocery for weapons or contraband.

---

[1] At all times relevant to this appeal, the trial court was known as the Territorial Court of the Virgin Islands and its judges were referred to as Territorial Court Judges. Effective January 1, 2005, however, the name of the Territorial Court changed to Superior Court of the Virgin Islands. *See* Act of Oct. 29, 2004, No. 6687, sec. 6, § 2, 2004 V.I. Legis. 6687 (2004). Recognizing this renaming, we employ the terms Superior Court and Superior Court Judge.

From inside the store, Sergeant DeGraff heard Turbe calling to him to come outside. When Sergeant DeGraff went outside, Turbe told him that he had a gun and wanted Sergeant DeGraff to take it from him. Sergeant DeGraff immediately arrested Turbe for unlawful possession of a firearm.

While Turbe was in custody at the Department of Corrections on September 13, 2003, Officer Dowdye approached him and arrested him for a second time. Turbe's second arrest was for allegedly assaulting Julian the day before.

Turbe was charged with one count of simple assault and two counts of third degree assault. V.I. CODE ANN. tit. 14, §§ 299, 297(2). He was also charged with one count of unlawful possession of a firearm, one count of unlawful possession of ammunition, and one count of possession of stolen property valued in excess of one hundred dollars. V.I. CODE ANN. tit. 14, §§ 2253(a), 2256(a), 2101(a).

A jury trial was conducted in the Superior Court from July 6, 2004, through July 8, 2004. Turbe testified in his own defense at the trial. On direct examination, Turbe stated that after he was arrested a police officer offered to "loose" him for a price, explaining:

> A: I tell him, "nah, me ain' never hear that word, I just come out of jail seven months ago."
>
> . . .
>
> I tell him I want to talk to the F.B.I. dem. And he tell me he ain' going to let me talk to the F.B.I. because the police officer who the gun belong to, it could be his friend.

(Trial Tr. 166, July 7, 2004.)

During cross examination, the prosecutor asked Turbe:

> Q: [Y]ou wanted to talk to the F.B.I.; am I correct?
> A: Yeah.
>
> . . .
>
> I tell [Officer] Joel Dowdye I want to know how I could talk to the F.B.I. dem because me ain' going down for this gun here.

(*Id.* at 179.) Turbe then stated that he asked to speak to the F.B.I. when he was first arrested, and that he could not do so from a jailhouse telephone. Turbe also accused Virgin Islands Police Officer David Monoson of impersonating an F.B.I. agent at the police station after Turbe's arrest.

The government denied that Turbe had ever requested to speak to the F.B.I. During the rebuttal direct examination, the prosecutor asked Sergeant DeGraff:

Q: Now, Sergeant DeGraff, at the time that you arrested Mr. Gregory Turbe, did he ask you to call the F.B.I. for him?

A: No, he didn't ask me to call the F.B.I. for him. He said he was going to call the F.B.I.

Q: And did he so call them?

A: Not on his own, he didn't call them. He just rambled about talking about calling the F.B.I. in reference to a case where guns were found in his house and bullet proof vests and stuff.

Q: Were you present when those items were taken from his home?

A: Yes, I was.

Q: Do you recall where they were?

A: It had six guns and one or two bullet proof vests taken from his home.

[PROSECUTOR:] Thank you. I have no further questions.

(*Id.* at 197.) The defense counsel objected and moved to have Officer DeGraff's testimony stricken on grounds that it exceeded the scope of Turbe's testimony about his requests to call the F.B.I. The jury was then excused while the Court further discussed the objection with the attorneys. The defense counsel moved for a mistrial, which the court immediately denied. The defense counsel objected to the denial of a mistrial.

The jury thereafter returned to the courtroom and received the following instruction:

THE COURT: Ladies and Gentlemen of the Jury, to the extent that Sergeant DeGraff said that the defendant will call the F.B.I., not that he had asked them to call them, that's something you'll have to decide in terms of whatever it is, but anything that Sergeant DeGraff said after that that concerns finding anything in the defendant's home or anything to do with guns or what not, that is ordered stricken from the record. What that means is, in your consideration of this case, you must not consider anything that Sergeant DeGraff said beyond what he said something to the effect that the defendant said he will call the F.B.I. Anything concerning what he might have found in the defendant's

home, that is stricken from the record, and you are not suppose [sic] to consider it.

(*Id.* at 207-08.)

The jury found Turbe not guilty on all of the simple assault, and third degree assault charges. However, the jury convicted Turbe of unauthorized possession of a firearm, unauthorized possession of firearm ammunition, and possession of stolen property. He was sentenced to fifteen years imprisonment and a fine of $25,000 for the firearm count; seven years imprisonment and a fine of $10,000 for the ammunition count; and, ten years and a fine of $10,000 for the stolen property count. All of Turbe's prison sentences run concurrently.

Turbe raises three issues on appeal. First, he argues that the prosecutor committed misconduct in questioning Sergeant DeGraff about prejudicial and irrelevant information, and that the Superior Court erred in denying his motion for a mistrial based on this questioning. Second, Turbe claims he was denied effective assistance of counsel when his trial counsel failed to take steps prior to and during trial to prevent the admission of prejudicial and irrelevant information. Third, Turbe contends that the punishments for unauthorized possession of a firearm and unauthorized possession of ammunition are cumulative, and the Superior Court erred in imposing separate sentences for these charges.

## II. DISCUSSION

### A. Jurisdiction

This Court has jurisdiction to review final judgments and orders of the Superior Court. See Revised Organic Act of 1954 23A, 48 U.S.C. § 1613a;[2] V.I. CODE ANN. tit. 4 § 33 (2002).

### B. Standard of Review

This Court exercises plenary review over the trial court's conclusions of law. *Saludes v. Ramos*, 744 F.2d 992 (3d Cir. 1984). Findings of fact are reviewed for whether they are clearly erroneous. *Anderson v. Bessemer*

---

[2] The complete Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541-1645 (1995 & Supp. 2000), *reprinted in* V.I. CODE ANN. 73-177, Historical Documents, Organic Acts, and U.S. Constitution (1995 & Supp. 2003) (preceding V.I. CODE ANN. tit. 1).

*City*, 470 U.S. 564, 575, 105 S. Ct. 1504, 84 L. Ed. 2d 518 (1985). Constitutional claims are given plenary review. *Warner v. Gov't of the V.I.*, 332 F. Supp. 2d 808, 810, 46 V.I. 251 (D.V.I. 2004).

■ We review the denial of mistrial for abuse of discretion. *United States v. West Indies Transport, Inc.*, 127 F.3d 299, 311, 37 V.I. 579 (3d Cir. 1997). We review *de novo* whether a prosecutor's conduct was improper. *United States v. Nelson Rodriguez*, 319 F.3d 12, 38 (1st Cir. 2003). Reversal may be avoided if trial errors are found to be harmless. *See* FED. R. CRIM. P. 52(a) (2002);[3] *United States v. Hakim*, 344 F.3d 324 (3d Cir. 2003).

■ Where trial counsel fails to object to an error, we reverse only if the asserted violation amounts to "plain error." *See* FED. R. CRIM. P. 52(b) (2002);[4] *United States v. Davis*, 407 F.3d 162, 164 (3d Cir. 2005). "Where a defendant demonstrates error that is plain, and that affects substantial rights, we may correct that error where the fairness, integrity, or public reputation of judicial proceedings was affected." *Davis*, 407 F.3d at 164 (quotations and citations omitted). In order to effect substantial rights, an error must have been prejudicial, and must have "affected the outcome of the [trial] court proceedings." *United States v. Olano*, 507 U.S. 725, 734, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993).

## III. ANALYSIS

### A. Denial of Mistrial

Turbe argues that the Superior Court abused its discretion in denying his motion for a mistrial. He contends that a mistrial should have been granted due to: (1) the misconduct of the prosecuting attorney, and (2) Sergeant DeGraff's testimony about the guns found at Turbe's house. Each of the asserted grounds is addressed below.

---

[3] Federal Rule of Criminal Procedure 52(a) provides:

Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.

FED. R. CRIM. P. 52(a) (2002).

[4] Federal Rule of Criminal Procedure 52(b) provides:

A plain error, that affects substantial rights may be considered even though it was not brought to the court's attention.

FED. R. CRIM. P. 52(b) (2002).

## 1. Prosecutorial Misconduct

■ We review prosecutorial misconduct using a two-part test. First, we must determine whether the prosecutor's conduct was improper. If so, we ask whether, in the context of the trial as a whole, the misconduct created sufficient prejudice as to violate the defendant's due process rights. *See Marshall v. Hendricks*, 307 F.3d 36, 63-64 (3d Cir. 2002) (initially analyzing whether the prosecutor's conduct at trial was improper, and if so, whether the misconduct violated the defendant's due process rights).

Here, the prosecutor began his rebuttal direct examination by asking Sergeant DeGraff whether Turbe had asked him to call the F.B.I., and whether Turbe had called the F.B.I. himself. The prosecutor properly posed these questions in order to disprove Turbe's statement that he had asked the police to call the F.B.I. for him after he was arrested. *See United States v. Chrzanowski*, 502 F.2d 573 (3d Cir. 1974) ("The proper function and purpose of rebuttal testimony is to explain, repel, counteract or disprove the evidence of the adverse party."). Sergeant DeGraff responded to both questions in the negative. Without any further questioning by the prosecutor, Sergeant DeGraff added that Turbe wished to call the F.B.I. in reference to a prior search of Turbe's home that uncovered guns and bullet proof vests, which was unrelated to the case at bar.

■ The prosecutor then delved deeper into the subject of the prior search by asking Sergeant DeGraff the following two questions:

> Q: Were you present when the items were taken from [Turbe's] home?
> A: Yes, I was.
> Q: Do you recall what they were?

(Trial Tr. 197, July 7, 2004.) This line of inquiry improper, as it was beyond the scope of anything Turbe testified about. *See United States v. Pantone*, 609 F.2d 675, 681 (3d Cir. 1979) (noting that rebuttal testimony is improper when it "does not rebut anything said by the defendant."); *see also United States v. Forsythe*, 594 F.2d 947 (3d Cir. 1979) (holding that evidence of uncharged crimes was improper on rebuttal, since none of the defendants made any general denial of wrongdoing which might have justified rebuttal in the form of evidence of uncharged crimes).

Under these circumstances, it was also improper for the prosecutor to question Turbe regarding the prior seizure of weapons from his house.[5] *See United States v. Jackson*, 339 F.3d 349, 357 (5th Cir. 2003) (holding that the prosecutor's indirect reference to a defendant's prior conviction was improper); *United States v. Vallie*, 284 F.3d 917, 921-22 (8th Cir. 2002) (holding that the prosecutor's question to the defendant about a prior unrelated offense was improper).

■ In determining whether prosecutorial misconduct resulted in sufficient prejudice to warrant a mistrial, we evaluate: (1) the scope of the comments within the context of the whole trial; (2) the effect of any curative instructions given; and (3) the weight of the evidence against the defendant. *See United States v. Gambone*, 314 F.3d 163, 179 (3d Cir. 2003). Curative instructions, which the jury is presumed to follow, are generally sufficient to overcome improper statements. *See United States v. Hakim*, 344 F.3d 324, 329-31 (3d Cir. 2003) (holding that a thirty-minute delay in providing curative instructions to a jury for improper conduct did not result in prejudice against the defendant).

Here, the prosecutor asked two improper questions throughout the trial. In the narrower scope of the rebuttal, the improper questions constituted half the inquiry. The defense counsel did not interrupt the improper questioning, but did object after Sergeant Degraff testified as to the specific number of weapons found at Turbe's home. The jury was excused after a short discussion regarding the objection. When they later returned to the courtroom, they were immediately instructed to disregard Sergeant DeGraff's response to the improper questions. Additionally, the trial judge reminded the jurors that they should not consider testimony that is not properly before them as evidence. Furthermore, the improper testimony of Sergeant DeGraff was stricken from the record at the close of the trial.

Finally, the evidence against Turbe on Counts Three, Four, and Five was significant, consisting of the testimony of the police officers as well as Turbe's own admission that he physically possessed the gun when he was stopped by the police. However, Turbe also testified that he had come into possession of the gun (and ammunition) only moments earlier, and that he called out to Sergeant DeGraff to inform him that he had recently

---

[5] After the defense counsel objected to Sergeant Degraff's testimony about the prior search, the prosecutor made no attempt to admit the evidence under Federal Rule of Evidence 404(b).

come into possession of the gun. Had the jury believed Turbe's testimony, he would have arguably had an affirmative defense to the crime of unauthorized possession of a firearm. *See* 23 V.I.C. § 470(a) (1996);[6] *see also United States v. McKie*, 36 V.I. 367, 112 F.3d 626, 630 (3d Cir. 1997) (holding that title 23, section 470 of the Virgin Islands Code creates an affirmative defense to the crime of unauthorized possession of a firearm, in violation of title 14, section 2253(a) of the Virgin Islands Code).

■ The Court is deeply troubled by the prosecutor's improper questions, especially given the complete lack of relevance of the questions to the appropriate subject of the rebuttal examination. However, the questions were short, and were not overly suggestive of wrongdoing in and of themselves. In the context of the entire trial, the Superior Court did not abuse its discretion in denying Turbe's motion for a mistrial based on the prosecutor's improper questions.

### 2. Sergeant DeGraff's Testimony

■ Sergeant DeGraff's testimony, like the questions that provoked it, was improper and inadmissible. It exceeded the scope of proper rebuttal testimony, as Turbe never said anything about the prior search of his home. *See Forsythe*, 594 F.2d at 947 (holding that evidence of uncharged crimes was improper on rebuttal because the defendant did not make any general denials of wrongdoing). Additionally, Sergeant Degraff's testimony was problematic because it referenced a prior bad act by Turbe, and was not offered to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake. *See Ledesma v. Virgin Islands*, 159 F. Supp. 2d 863, 869 (D.V.I. 2001) ("This jurisdiction has recognized that evidence of other acts may be admitted to provide background information and the parties' knowledge of each other; to establish a continuing relationship; and to explain the circumstances, background or

---

6 Title 23, section 470(a) of the Virgin Islands Code provides:

Any person other than a licensed dealer, who purchases or otherwise obtains any fire-arms or ammunition from any source within or outside of the Virgin Islands shall report such fact in writing or in person to the Commissioner *immediately* after receipt of the firearm or ammunition, furnishing a complete description of the firearm or ammunition purchased or otherwise obtained. He shall also furnish his own name, address, date of birth and occupation.

23 V.I.C. § 470(a) (1996) (emphasis added).

development of the crime charged or complete the story of the crime on trial." (internal citations and quotations omitted)).

■■ When evaluating whether a prosecution witness's inadmissible statements were sufficiently prejudicial to warrant a mistrial, we examine:

> (1) whether [the witness's] remarks were pronounced and persistent, creating a likelihood they would mislead and prejudice the jury, (2) the strength of the other evidence, and (3) curative action taken by the [trial] court.

*United States v. Davis*, 397 F.3d 173, 181 (3d Cir. 2005) (quoting *United States v. Xavier*, 2 F.3d 1281, 1285, 29 V.I. 279 (3d Cir. 1993)). As with improper statements by the prosecutor, "courts must normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it." *Id.* (citations and quotations omitted). However, where the

> potential prejudice is such that there is inherent danger that jurors, in determining the issues, may be unable or unwilling to erase from their minds that which has improperly come to their attention, no instructions or admonitions by the trial judge will suffice. The only appropriate remedy in such a situation is to declare a mistrial.

*United States v. Carney*, 461 F.2d 465, 467-68 (3d Cir. 1972).

Here, Sergeant DeGraff raised the improper issue on his own initiative. In response to questioning by the prosecutor, Sergeant DeGraff then made two further statements detailing the items found in Turbe's home. The objectionable testimony, which was not a logical response to the prosecutor's questioning, made up the entire content of the rebuttal direct examination. However, the jury was promptly instructed to disregard the improper testimony, and was again reminded to do so at the close of the trial. Finally, the evidence against Turbe was significant, though he had testified as to the possible affirmative defense under title 23, section 470(a) of the Virgin Islands Code.

■ In the context of the entire trial, the curative instructions given to the jury were sufficient to overcome any prejudice caused by the prosecutor's improper questions. *See, e.g., United States v. Davis*, 397 F.3d 173, 179-80 (3d Cir. 2005) (holding that a mistrial was not required after a police officer testified that he had once chased the

defendant after the defendant had fired a gun where the testimony was a logical response to the prosecutor's questions, the statement was not made maliciously, the evidence against the defendant was great, and the jury was instructed to disregard the testimony); *United States v. Hakim*, 344 F.3d 324 (3d Cir. 2003) (holding that a curative instruction, given thirty minutes after a witness testified as to the defendant's prior drug use, was sufficient to overcome any prejudice caused by such testimony); *United States v. De Larosa*, 450 F.2d 1057 (3d Cir. 1971) (finding that any prejudice caused by a co-defendant's testimony that he had met the defendant in a correctional institution was adequately cured by an instruction telling the jury to disregard such testimony).

Accordingly, the Superior Court did not abuse its discretion in denying Turbe's motion for a mistrial due to the testimony of Sergeant DeGraff.

## B. Ineffective Assistance of Counsel

 Under the Sixth Amendment, criminal defendants have the right to effective assistance of counsel. Generally, ineffective assistance of counsel claims are limited to collateral review. *United States v. Gambino*, 788 F.2d 938, 950 (3d Cir. 1986). We will consider ineffective assistance of counsel claims on direct appeal only if the trial record clearly reflects the grounds therefor. *Id.* Only where the record is sufficient to establish ineffective assistance of counsel without an evidentiary hearing may we decide such claims. *United States v. McLaughlin*, 386 F.3d 547, 556 (3d Cir. 2004).

 Turbe argues that his trial counsel was ineffective for failing to file: (1) a motion *in limine* to exclude evidence of Turbe's prior possession of unlicensed firearms; (2) a motion for a new trial pursuant to Federal Rule of Criminal Procedure 33. *Id.* However, Turbe's claims are not cognizable on direct appeal, as the record precludes a comprehensive inquiry into the strategy and tactics behind counsel's' decisions not to file the motions. *See id.* ("Where a claim of ineffective assistance of counsel is based on attorney incompetence, the lack of a fully developed record often precludes a comprehensive inquiry into the elements' of strategy or tactics that may have entered into defense counsel's challenged decision.").

## C. Double Jeopardy Claim

Turbe contends that the Superior Court erred in imposing multiple punishments for Counts Three and Four: fifteen years imprisonment plus

a $25,000 fine for Count Three, unauthorized possession of a firearm; and seven years imprisonment plus a $10,000 fine for Count Four, unauthorized possession of ammunition.[7] He argues that the crimes of unauthorized possession of a firearm and unauthorized possession of ammunition are one and the same, so he may only be punished once for Counts Three and Four. The Court is not aware of any evidence on record to suggest that the defense counsel ever objected to the imposition of separate punishments for Counts Three and Four.

As a threshold matter, we must determine whether the trial court erred in imposing multiple sentences for Counts Three and Four. Since Turbe failed to object to the sentencing in the court below, the court will review the issue for plain error. Therefore, only if the trial court committed plain error that affected Turbe's substantial rights may we consider whether fairness, integrity, or public reputation of judicial proceedings warrants reversal. *See, e.g., United States v. Irizarry*, 341 F.3d 273, 298-99 (3d Cir. 2003) (holding that reversal was unwarranted despite the admission of the defendant's prior criminal acts, since such admission did not seriously affect the fairness, integrity, or public reputation of judicial proceedings (quotation and citation omitted)).

■ Under the Double Jeopardy Clause of the Fifth Amendment, no person may "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. The Double Jeopardy Clause applies to imprisonment and monetary penalties, and protects against multiple punishments for the *same offense. United States v. $184,505.01 in U.S. Currency*, 72 F.3d 1160, 1165 (3d Cir. 1995) (internal citations omitted).

In determining whether two crimes are the same offense for double jeopardy purposes:

> ■ The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

*United States v. Dixon*, 509 U.S. 688, 113 S. Ct. 2849, 125 L. Ed. 2d 556 (1993) (quoting *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct.

---

[7] The trial court ordered that Turbe will serve his sentences of imprisonment concurrently.

180, 76 L. Ed. 306 (1932)). Each crime must require proof of an element the other does not.

■ The elements required to prove unauthorized possession of a firearm under title 14, section 2253(a) of the Virgin Islands Code[8] ("Section 2253") are (1) that the defendant was unauthorized to possess a firearm,[9] or did not have a license for the weapon; and (2) that the defendant had at least constructive possession of the firearm. *See United States v. McKie*, 112 F.3d 626, 630, 36 V.I. 367 (3d Cir. 1997) (holding that the government was required to prove that the defendant lacked a license to possess a firearm, but not that the defendant possessed the firearm for any duration of time); *Hunt v. Virgin Islands*, 46 V.I. 534, 539-40 (D.V.I. 2005) (holding that whether the defendant is a member of a group specifically authorized to possess firearms is an affirmative defense, rather than an element of the crime).

■ To convict under title 14, section 2256 of the Virgin Islands Code ("Section 2256"), the government must prove that the defendant possessed firearm ammunition, which is defined as "any self-contained cartridge or shotgun shell, by whatever name known, which is designed to be used or adaptable for use in a firearm." 14 V.I.C. § 2256(c)(2) (2001). "The touchstone of criminal culpability under section 2256 is the absence of authorization to possess such ammunition." *Hunt*, 46 V.I. at 538. Whether the defendant is authorized to possess firearm ammunition

---

[8] Title 14, section 2253(a) of the Virgin Islands Code provides:

Whoever, unless otherwise authorized by law, has, possesses, bears, transports or carries either, actually or constructively, openly or concealed any firearm, as defined in Title 23, section 451(d) of this code, loaded or unloaded, may be arrested without a warrant, and shall be sentenced to imprisonment of not less than one year nor more than five years and shall be fined not less than $5,000 . . . .

14 V.I.C. § 2253(a) (2001).

[9] The defendant must possess a "firearm," as defined by title 23, section 451(d) of the Virgin Islands Code:

[A]ny device by whatever name known, capable of discharging ammunition by means of gas generated from an explosive composition, including any air gas or spring gun or any "BB" pistols or "BB" guns that have been adapted or modified to discharge projectiles as a firearm.

23 V.I.C. § 451(d) (2001).

is an affirmative defense on which the defendant bears the burden of proof. *See* 14 V.I.C. § 2256(f) (2001);[10] *Hunt*, 46 V.I. at 538.

 Unauthorized possession of a firearm is not the same offense as unauthorized possession of firearm ammunition because each requires proof of an element that the other does not. Most fundamentally, one may possess a firearm without possessing ammunition, and vice versa. Moreover, Section 2253 requires the government to prove that the defendant, lacked a license to possess the firearm. *Hunt*, 46 V.I. at 538. Section 2256, however, places the burden on the defendant to prove authorization as an affirmative defense. *Id.* Therefore, the crime of unauthorized possession of a firearm is not the same offense as unauthorized possession of ammunition for double jeopardy purposes. Accordingly, the Superior Court did not err in imposing multiple punishments against Turbe for Counts Three and Four.

## IV. CONCLUSION

Based on the foregoing, the Court will affirm Turbe's conviction and his sentence. Additionally, the Court will dismiss Turbe's appeal insofar as it alleges ineffective assistance of counsel. An appropriate judgment follows.

---

[10] Title 14, section 2256(f) of the Virgin Islands Code provides:

An information based upon a violation of this section need not negate any exemption herein contained. The defendant shall have the burden of proving such an exemption.

14 V.I.C. § 2256(f) (2001).