**KEVIN DAVID, Appellant**

**v.**

**GOVERNMENT OF THE VIRGIN ISLANDS, Appellee**

D.C. Criminal App. No. 2003-129

District Court of the Virgin Islands

St. Thomas and St. John Division

June 25, 2009

DENIECE RAINEY, ESQ., St. Thomas, USVI, *For the appellant.*

MAUREEN PHELAN, AAG, St. Thomas, USVI, *For the appellee.*

GÓMEZ, *Chief Judge of the District Court of the Virgin Islands*; FINCH, *Judge of the District Court of the Virgin Islands*; and STEELE, *Judge of the Superior Court of the Virgin Islands, Division of St. Croix, sitting by designation.*

## MEMORANDUM OPINION

(June 25, 2009)

Following a jury trial in the Superior Court of the Virgin Islands, Division of St. Thomas and St. John (the "Superior Court")[1] Kevin David ("David") was convicted of possession of marijuana with intent to distribute. For the reasons given below, the Court should affirm David's conviction.

---

[1] Prior to 2005, the trial court was known as the Territorial Court of the Virgin Islands and its judges were referred to as Territorial Court Judges. Effective January 1, 2005, however, the name of the Territorial Court changed to Superior Court of the Virgin Islands. *See* Act of Oct. 29, 2004, No. 6687, sec. 6, § 2, 2004 V.I. Legis. 6687 (2004). Recognizing this renaming, this Court employs the terms Superior Court and Superior Court Judge.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On February 5, 2002, David traveled from Atlanta, Georgia to St. Thomas, U.S. Virgin Islands on a commercial airline flight. Drug Enforcement Agency ("DEA") officers at the Atlanta airport observed that David was in possession of a large sum of cash as he passed through security before boarding his flight to St. Thomas. Agents also observed that an unidentified woman who appeared to be an airport employee met with David briefly while David was boarding the airplane. While David was in flight, the DEA agents in Atlanta contacted law enforcement in St. Thomas and gave a description of David and his belongings.

When David arrived at the airport in St. Thomas, DEA Special Agent Mark McHugh observed him disembark from the airplane. After David retrieved two checked bags from the baggage claim area at the airport in St. Thomas, he was approached by Special Agent McHugh. David agreed to accompany Special Agent McHugh to an area near the customs office at the St. Thomas airport. After receiving David's consent, Special Agent McHugh and High Intensity Drug Trafficking Area ("HIDTA") Task Force Officer Richard Velazquez searched his person and found approximately $4,500 in cash. Without David's consent, United States Customs Inspector Gloria Lambert searched his luggage and found over ten pounds of marijuana wrapped in ten plastic bundles. David was arrested.

On February 13, 2002, the Government of the Virgin Islands (the "Government") filed a single-count criminal information charging David with possession of marijuana with intent to distribute, in violation of title 19, section 604(a)(1) of the Virgin Islands Code.

David moved for suppression of the marijuana found in his baggage.

On July 12, 2002, the Superior Court conducted a hearing on David's suppression motion. The Government presented no witnesses or other evidence at the suppression hearing, as its key witness was outside the territory.[2] The court proceeded to hear the parties' arguments regarding the legality of the search. At the conclusion of the hearing, the trial judge took the motion under advisement and ordered additional briefing on the

---

[2] "On a motion to suppress, the government bears the burden of showing that each individual act constituting a search or seizure under the Fourth Amendment was reasonable." *United States v. Ritter,* 416 F.3d 256, 261 (3d Cir. 2005).

issue of whether the search of David's luggage fell within the border search exception to the warrant requirement of the Fourth Amendment. The court also stated:

> THE COURT: I'll give the parties any opportunity to put on any factual matters . . . unless the parties can come to some agreement that its purely a legal matter.
>
> . . .
>
> [DEFENSE ATTORNEY]: I do believe the issue is really the border issue as the Court was discussing . . . . I don't think there's a need for a hearing.

(Suppression Hr'g Tr. 83-84, July 12, 2002.) The court set a control date for an evidentiary hearing in the event the parties desired to present evidence on the matter. The record below reflects that no such hearing was never conducted.

On October 30, 2002, the Superior Court entered a memorandum opinion and order denying David's motion to suppress. The court reasoned that

> the Customs Inspector did not possess probable cause when she searched the defendant's luggage. Such probable cause, however, was not needed because the search occurred at Cyril E. King Airport, which is the functional equivalent of a border. Additionally, there is an "internal" customs border between the United States customs territory and the Virgin Islands. Customs Inspectors have the authority to make routine, suspicionless searches of persons and things that enter the Virgin Island from the mainland and other custom zone areas. The search in this case was "routine," despite the fact that it was not at a regularly established checkpoint, because it was mildly intrusive and was based on suspicion. Such searches are "reasonable" within the meaning of the Fourth Amendment.[3]

*Gov't of the V.I. v. David*, 45 V.I. 100, 117 (Terr. Ct. 2002).

David's jury trial was conducted on April 14 and 15, 2003. Several witnesses testified on behalf of the Government, including Special Agent

---

[3] The Superior Court also held that "the governmental agents who conducted the search and seizure did not violate the Equal Protection clause of the Fourteenth Amendment." *David,* 45 V.I. at 117. That holding is not at issue in this appeal.

McHugh and Customs Inspector Lambert. David testified on his own behalf at his trial. He admitted to possessing the marijuana in his checked luggage. David stated that he intended to use the marijuana "to boil some marijuana tea and drink the bush," in order to ease severe stomach pains he experienced since 1999. (Trial Tr. 189, April 14, 2003.) At the conclusion of the trial, the jury found David guilty of the offense charged in the information.

On July 1, 2003, the Superior Court entered a judgment and commitment, finding that David could be sentenced pursuant to the Virgin Islands habitual offender statute[4] based on a crime for which David was convicted in 1992. The court sentenced David to ten years imprisonment, with five years suspended. The Court also suspended David's driver's license for five years following his release from prison.

David timely appealed his conviction, raising the following two issues: (1) whether the trial court committed reversible error in denying David's motion to suppress the marijuana as evidence in the Government's case-in-chief at trial, and (2) whether the conduct of the prosecutor deprived David of his due process right to a fair trial.

## II. JURISDICTION & STANDARD OF REVIEW

This Court has jurisdiction over appeals of final judgments and orders of the Superior Court filed before January 29, 2007, the date on which the Supreme Court of the Virgin Islands was certified as ready to assume such jurisdiction. *See* Revised Organic Act of 1954 23A, 48 U.S.C. § 1613a; V.I. CODE ANN. tit. 4, § 33 (2002).[5]

"We review *de novo* questions of law, issues implicating rights protected under the U[nited] S[tates] Constitution, and the interpretation of statute[s]. However, we afford the more deferential clear error review to [the trial court's] factual determinations." *Garcia v. Gov't of the V.I.*, 48 V.I. 530, 534 (D.V.I. App. Div. 2006) (citing *Gov't of the V.I. v. Albert*, 42 V.I. 184, 89 F. Supp. 2d 658, 663 (D.V.I. App. Div. 2001)); *see also Saludes v. Ramos*, 744 F.2d 992 (3d Cir. 1984).

---

[4] *See* V.I. CODE ANN. tit. 14, § 61(a).

[5] The complete Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541-1645 (1995 & Supp. 2000), *reprinted in* V.I. CODE ANN. 73-177, Historical Documents, Organic Acts, and U.S. Constitution (1995 & Supp. 2003) (preceding V.I. CODE ANN. tit. 1).

Decisions denying motions to suppress evidence are reviewed for clear error with respect to the court's underlying factual findings, although the court's application of the law to those facts is entitled to plenary review. *See United States v. Leveto*, 540 F.3d 200, 211 n.9 (3d Cir. 2008); *Gov't of V.I. v. Petersen*, 131 F. Supp. 2d 707, 710 (D.V.I. App. Div. 2001).

We review *de novo* whether a prosecutor's conduct was improper. *See Turbe v. Gov't of the V.I.*, 49 V.I. 730 (D.V.I. App. Div. 2008) (citing *United States v. Nelson Rodriguez*, 319 F.3d 12, 38 (1st Cir. 2003)).

Reversal may be avoided if trial errors are found to be harmless. *See* FED. R. CRIM. P. 52(a) (2002)[6]; *Davis v. Gov't of the V.I.*, 48 V.I. 860, 871-73 (D.V.I. App. Div. 2007). "Under this standard, the reviewing court must satisfy itself that there is no reasonable possibility that the error, viewed in the context of all the evidence presented, contributed to the guilty verdict, undermining confidence in the trial." *Davis*, 48 V.I. at 871-72.

## III. ANALYSIS

### A. Motion to Suppress

David argues that the Superior Court erred by denying his motion to suppress the marijuana found in his luggage at the St. Thomas airport. He claims that the marijuana should have been excluded from the Government's case-in-chief at trial because the search of his luggage was conducted in violation of his rights under the Fourth Amendment of the United States Constitution.

■ The Fourth Amendment protects citizens "against unreasonable searches and seizures." U.S. CONST., amend. IV.[7] "What is reasonable depends upon all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." *United States v. Montoya de*

---

[6] Federal Rule of Criminal Procedure 52(a) ("Rule 52(a)") provides that "[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." FED. R. CRIM. P. 52(a) (2002).

Rule 52(a) is made directly applicable to the Superior Court by Superior Court Rule 7. *See* SUPER. CT. R. 7 (1994) ("The practice and procedure in the Superior Court shall be governed by the Rules of the Superior Court and, to the extent not inconsistent therewith, by the Federal Rules of . . . Criminal Procedure . . . .").

[7] The Fourth Amendment has been extended to the United States Virgin Islands by section 3 of the Revised Organic Act of 1954, 48 U.S.C. § 1561, entitled "Bill of Rights."

*Hernandez,* 473 U.S. 531, 537, 105 S. Ct. 3304, 87 L. Ed. 2d 381 (1985). There is a presumptive requirement that, to be reasonable, searches or seizures must be carried out pursuant to a warrant. *See Katz v. United States,* 389 U.S. 347, 357, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967) ("[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment — subject only to a few specifically established and well delineated exceptions.") (internal citations omitted).

■ As an exception to the warrant requirement, the Supreme Court has explained that "searches made at the border, pursuant to the longstanding right of the sovereign to protect itself by stopping and examining persons and property crossing into this country, are reasonable simply by virtue of the fact that they occur at the border." *United States v. Flores-Montano,* 541 U.S. 149, 124 S. Ct. 1582, 1585, 158 L. Ed. 2d 311 (2004) (internal citation and quotations omitted); *see also United States v. Glasser,* 750 F.2d 1197, 1200 (3d Cir. 1984) ("One of the inherent powers of a sovereign is the power to restrict or regulate the entry of persons and property across the border."). Thus, law enforcement officers may perform routine border searches without a warrant, probable cause, or reasonable suspicion. *United States v. Montoya de Hernandez,* 473 U.S. 531, 538, 105 S. Ct. 3304, 87 L. Ed. 2d 381 (1985).

■ "[T]he Territory of the U.S. Virgin Islands is a 'customs zone' separate and apart from the United States, Puerto Rico and other U.S. possessions, as evidenced by the statutes governing the collection of Customs duties and the enforcement of immigration laws in the Virgin Islands." *United States v. Mark,* 2007 U.S. Dist. LEXIS 66165, *24, [WL] (D.V.I. 2007) (quoting *United States v. Chabot,* 19 V.I. 28, 531 F. Supp. 1063, 1069 (D.V.I. 1982). Thus, the island of St. Thomas constitutes a border within the meaning of the border search exception to the warrant requirement. *Id.*

David appears to concede that some border exists between the U.S. Virgin Islands and the rest of the United States. However, he argues that such border operates in only one direction: from the U.S. Virgin Islands to the continental United States, Puerto Rico, or other United States possession. As such, David claims that warrantless searches without probable cause should not be conducted when people enter the U.S. Virgin Islands from a U.S. state.

■David cites *United States v. Hyde,* 30 V.I. 475, 37 F.3d 116 (3d Cir. 1994), in support of his proposition that the border at the U.S. Virgin Islands operates only one-way. In *Hyde,* customs officers searched the defendants at the St. Thomas airport as they were departing the Virgin Islands for Miami, Florida, and found cocaine. The defendants filed a motion to suppress the cocaine, which was granted by the trial court. The United States Court of Appeals for the Third Circuit reversed, holding that "routine customs searches of persons and their belongings without probable cause as they leave the Virgin Islands for the continental United States are not unreasonable under the Fourth Amendment." *Id.* at 117.

■ The Third Circuit in *Hyde* had no occasion to consider whether border search exception would also apply to travelers entering the U.S. Virgin Islands from the U.S. mainland. Moreover, nothing in *Hyde* suggests that such a search would be impermissible. Rather, the court explained,

> Shortly after the United States acquired the Virgin Islands from Denmark in 1917, Congress exercised that authority to create a border *between* the Virgin Islands and the rest of the United States for customs purposes . . . . *Consistent with the approach of imposing duty on goods leaving the Virgin Islands for the mainland, an approach which remains in place today,* the Tariff Act of 1930 specifies that the United States customs territory excludes the Virgin Islands. . . .
>
> . . .
>
> Thus, since the acquisition of the Virgin Islands, Congress has consistently asserted its authority to impose a border *between* the Virgin Islands and the rest of the United States for customs purposes and has authorized customs officials to search vessels and goods passing *between* the Virgin Islands and the rest of the country.

*Id.* at 121 (emphasis added).

David also cites *Torres v. Puerto Rico,* 442 U.S. 465, 99 S. Ct. 2425, 61 L. Ed. 2d 1 (1979), to argue that the Superior Court lacked authority to apply the border search exception to travelers entering the U.S. Virgin Islands from the mainland United States. In *Torres,* the Supreme Court of the United States struck down a local Puerto Rico statute authorizing warrantless searches of any baggage arriving in Puerto Rico from the

United States. The Court reasoned that the legislature of Puerto Rico lacked authority to enact such a statute because "Puerto Rico has no sovereign authority to prohibit entry into its territory; as with all international ports of entry, border and customs control for Puerto Rico is conducted by federal officers." *Id.* at 472-73. David attempts to analogize the trial judge's denial of his suppression motion to the local statute struck down in *Torres*. The Court, however, rejects that analogy and finds *Torres* inapplicable to the facts of this case.

█ David has failed to present, and the Court is unaware of, any valid legal authority for the proposition that the border between the U.S. Virgin Islands to the mainland operates only one-way. On the contrary, a person who enters the U.S. Virgin Islands from the continental United States, like a person traveling in the opposite direction, is considered to have crossed a border within the meaning of the border search exception to the warrant requirement. *See United States v. Chabot,* 531 F. Supp. 1063, 1069, 19 V.I. 28 (D.V.I. 1982) (explaining that the U.S. Virgin Islands is a "customs zone" separate and apart from the United States, Puerto Rico, and other United States possessions, and thus the border search exception applies to persons entering St. Croix from Puerto Rico); *see also United States v. Herbert,* 886 F. Supp 524, 32 V.I. 308 (D.V.I. 1995) (applying the Third Circuit's reasoning in *Hyde* to conclude that "sections 3 and 4 of the 1917 Organic Act of the Virgin Islands thus create a two-way 'customs' border between the Virgin Islands and the mainland").

█ Because it is impractical to expect that searches can be conducted at the exact moment a person crosses a border, the border search "exception applies not only at the physical boundaries of the United States, but also at the 'the functional equivalent' of a border." *United States v. Whitted,* 50 V.I. 1081, 541 F.3d 480, 485 (3d Cir. 2008) (quoting *Almeida-Sanchez,* 413 U.S. at 272-73). An international airport, such as the Cyril E. King airport in St. Thomas, may be considered the functional equivalent of a border for Fourth Amendment purposes. *See Almeida-Sanchez,* 413 U.S. at 273 (acknowledging that "a search of the passengers and cargo of an airplane arriving at a St. Louis airport after a nonstop flight from Mexico City would clearly be the functional equivalent of a border search").

██ The search of David's luggage occurred at the Cyril E. King airport in St. Thomas, shortly after David arrived on his flight from Atlanta, Georgia. Nothing in the record suggests that the search of David

at the airport was highly intrusive or posed a serious threat to David's dignity or privacy. *See Flores-Montano,* 541 U.S. at 152-53 (noting that some level of suspicion may be required for non-routine border searches, or "highly intrusive searches of the person-dignity and privacy interests of the person being searched."). Additionally, the record indicates that the search occurred in close temporal and spacial proximity to the place of arrival. Therefore, the search of David was a border search, for which no search warrant, probable cause, or consent was necessary. *See, e.g., United States v. Mark,* 2007 U.S. Dist. LEXIS 66165, \*25-26, [WL] (D.V.I. 2007) (holding that the warrantless search of a defendant who traveled from Atlanta, Georgia to St. Thomas was justified under the border exception); *Chabot,* 531 F. Supp. at 1069 (acknowledging that the search of a pilot who arrived in St. Thomas from Puerto Rico was a valid border search for which no warrant was required).

Accordingly, the Superior Court did not err in denying David's motion to suppress.

## B. Prosecutor's Conduct

David argues that the prosecutor made improper comments during closing arguments, which infringed on David's due process right to a fair trial.

█ The Court applies a two-part test in assessing prosecutorial misconduct. First, we must determine whether the conduct in question was improper. If so, we must then ask whether, in the context of the trial as a whole, the misconduct created sufficient prejudice as to violate the defendant's due process rights. *See Marshall v. Hendricks,* 307 F.3d 36, 63-64 (3d Cir. 2002); *Turbe v. Gov't of the V.I.,* 49 V.I. 730, 738 (D.V.I. App. Div. 2008).

██ David argues that, during the prosecutor's summation, the prosecutor inappropriately commented on the veracity of Government witnesses, and referred to prior uncharged bad acts.[8]

---

[8] David argues that some of the prosecutor's repeated references to David as a "drug dealer" during closing arguments were inflammatory. However, the prosecutor's reference to David as a "drug dealer" was supported by evidence in the record, including: the testimony of law enforcement officials; the physical evidence of the marijuana itself, which was a large quantity and packaged in several bundles; and the large amount of cash recovered from David's person at the airport. Thus, the prosecutor's labeling of David as a "drug dealer" were

█ "The purpose of summations is for the attorneys to assist the jury in analyzing, evaluating and applying *the evidence." United States v. Pelullo,* 964 F.2d 193, 219 (3d Cir. 1992) (quoting *United States v. Morris,* 568 F.2d 396, 401 (5th Cir. 1978) (emphasis in original)). The prosecutor, as the representative of the sovereign, should prosecute with vigor but must refrain from engaging in closing arguments calculated to bring about a conviction not based on the evidence. *See Berger v. United States,* 295 U.S. 78, 55 S. Ct. 629, 79 L.Ed. 1314 (1935), *overruled on other grounds, Stirone v. United States,* 361 U.S. 212, 215, 80 S. Ct. 270, 4 L. Ed. 2d 252 (1960). It is therefore improper for a prosecutor, during closing argument, to vouch for the credibility of government witnesses or express his personal opinion. *See Young,* 470 U.S. at 18-19 ("The prosecutor's vouching for the credibility of witnesses and expressing his personal opinion . . . carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence.").

█ However, "[i]n order for vouching to be improper, the prosecutor's assurance of a witness's credibility must be based on either the prosecutor's personal knowledge, or other information not contained in the record." *United States v. Weatherly,* 525 F.3d 265, 271 (3d Cir. 2008) (quotations omitted); *United States v. Harris,* 471 F.3d 507, 512 (3d Cir. 2006) ("With respect to improper vouching, two criteria must be met: (1) the prosecutor must assure the jury that the testimony of a Government witness is credible; and (2) this assurance [must be] based on either the prosecutor's personal knowledge, or other information not contained in the record." (quotations omitted)). "[I]t is not enough for a defendant on appeal to assert that the prosecutor assured the jury that a witness' testimony was credible." *United States v. Walker,* 155 F.3d 180,

---

not improper. *See, e.g., United States v. Pungitore,* 910 F.2d 1084, 1127 (3d Cir. 1990) (holding that the prosecutor's reference to defendants as "cold-blooded murderer[s]" and "mob killers" during summation was not improper because it was a fair comment on evidence), *aff'd,* 172 F.3d 861 (3d Cir. 1998).

David further contends that the prosecutor inappropriately suggested that David committed a prior bad act by stating that he failed to pay taxes in 2001 or 2002. However, David admitted during trial that he had not paid his taxes during those years. Accordingly, this comment was also a proper comment on the evidence admitted during David's trial. *See, e.g., United States v. Vazquez-Rivera,* 407 F.3d 476, 485 (1st Cir. 2005) (holding that the prosecutor's reference to coconspirator's past murder conviction was not improper because it had already been entered in the record).

187 (3d Cir. 1998)). To successfully claim improper vouching, "[t]he defendant must be able to identify as the basis for [the prosecutor's] comment an explicit or implicit reference to either the personal knowledge of the prosecuting attorney or information not contained in the record." *Id.*

Here, the prosecutor told the jury during summation:

> [THE PROSECUTOR]: No question was asked of the Government's witnesses because they were just telling everything and doing their job. They were telling the truth . . . .

(Trial Tr. 20, April 5, 2003.)

 Those comments clearly constituted an assurance to the jury of the credibility of the Government's witnesses, based on the fact that the defense attorney declined to cross examine them during the trial. However, there is nothing to suggest that such assurance was based on the prosecutor's personal knowledge or other information outside the record that would have supported the witnesses' veracity. Accordingly, the prosecutor did not improperly vouch for the credibility of Government witnesses during summation. *See, e.g., United States v. Brennan,* 326 F.3d 176, 185 (3d Cir. 2003) (holding that a prosecutor's assurances of a cooperating witness' credibility were not improper because "neither of these brief statements made during summation suggest that the prosecutor had personal knowledge or possessed other information not contained in the record that would have supported [the witness'] credibility"); *Walker,* 155 F.3d at 187 (holding that the prosecutor's closing remark suggesting that government witnesses were truthful did not constitute improper vouching because it "d[id] not maintain the credibility of the two witnesses by referring to information outside the record, nor d[id] it contain a personal assurance of veracity").

## IV. CONCLUSION

For the foregoing reasons, the Court will affirm David's conviction. An appropriate Order follows.